### T. Copeland & Sons, Inc., et al. v. Kansa General Insurance Company, et al.

[762 A.2d 471]

No. 98-505

Present: Amestoy, C.J., Morse, Johnson, Skoglund, JJ., and Van Benthuysen, Supr. J., Specially Assigned

Opinion Filed July 28, 2000

Motion for Reargument Denied August 29, 2000

*R. Bradford Fawley* of *Downs Rachlin & Martin, PLLC*, Brattleboro, for Plaintiffs-Appellants.

*Frank H. Zetelski*, Rutland, for Defendant-Appellee Kansa General International Insurance Co.

*John L. Putnam* and *David R. Putnam* of *Stebbins, Bradley, Wood & Harvey*, Hanover, New Hampshire, for Defendant-Appellee U.S. Fire Insurance Co.

*William H. Quinn* of *Pierson, Wadhams, Quinn & Yates*, Burlington, for Defendant-Appellee Zurich Insurance Co.

*John Davis Buckley* of *Theriault & Joslin, P.C.*, Montpelier, and *Richard W. Bryan* and *Richard S. Kuhl* of *Jackson & Campbell, P.C.*, Washington, D.C., for Defendants-Appellees American Homes Assurance Co. and New Hampshire Insurance Co.

*Samuel Hoar, Jr., Shapleigh Smith, Jr.* and *Elizabeth H. Miller* of *Dinse, Knapp & McAndrew, P.C.*, for Defendant-Appellee Reliance Insurance Co.

*Brooks, McNally, Platto & Vitt, P.C.*, Norwich, and *Alexandre de Gramont* of *Crowell & Moring, LLP*, Washington, D.C., for Defendant-Appellee Cigna Insurance Co.

**Morse, J.** Plaintiff Copeland, as judgment creditor, sued the seven insurance companies of the judgment debtor, Maska U.S., Inc., for damages under a direct action statute, which provides, "in case of [the] insolvency or bankruptcy [of insured,] an action may be maintained by the injured person or claimant against the company under the terms of the policy." 8 V.S.A. § 4203(3). The superior court granted defendants' motions to dismiss on the ground that Copeland's suit was time-barred by the one-year limitations period established by 8 V.S.A. § 4203(2) ("No action shall lie against the company to recover for any loss under this policy, unless brought within one year after the amount of such loss is made certain either by judgment against the insured . . . or by agreement between the parties . . . ."). Copeland argues that the court erred by not applying the general six-year limitations period provided by 12 V.S.A. § 511 ("A civil action . . . shall be commenced within six years after the cause of action accrues and not thereafter."). We affirm.

Copeland manufactures furniture at the Pierson Industrial Park in Bradford, Vermont. In June 1992, Copeland sued Maska, an adjoining manufacturer of hockey jerseys, for alleged contamination of its real property. The case settled, and, on June 28, 1995, the superior court entered judgment against Maska in the amount of $7,000,000. On October 24, 1995, after it had paid Copeland $1,000,000 towards satisfaction of the judgment, Maska filed for bankruptcy.[1] On November 1, 1996, Copeland sued Maska's several insurers, the defendants below, to recover its judgment.

In 1919, the Vermont Legislature passed an act requiring that all liability insurance policies issued in Vermont contain four conditions. See 1919, No. 155, § 2 (codified as 8 V.S.A. § 4203(1)-(4)). Two are at issue in this case. They are subsection (2):

> No action shall lie against the [insurance] company to recover for any loss under this [insurance] policy, unless brought within one year after the amount of such loss is made certain either by judgment against the insured after final determination of the litigation or by agreement between the parties with the written consent of the company;

---

[1] According to Copeland, upon the adjudication of Maska's bankruptcy, they expect to recover $3,000,000 from the estate, and be left with an unsatisfied judgment of a like amount.

*id.* § 4203(2), and subsection (3):

> The insolvency or bankruptcy of the insured shall not release the company from the payment of damages for injury sustained or loss occasioned during the life of the policy, and in case of such insolvency or bankruptcy an action may be maintained by the injured person or claimant against the company under the terms of the policy, for the amount of any judgment obtained against the insured not exceeding the limits of the policy.

*Id.* § 4203(3). Thus, subsection (2) established a one-year limitations period for actions against insurers seeking to recover under an insurance policy, and subsection (3) created an avenue through which injured parties could directly sue insurance carriers if the insured is insolvent or bankrupt. As mentioned above, Copeland invoked subsection (3) to bring the underlying suit against defendants. We now must determine whether it was too late in doing so, because the judgment was entered on June 28, 1995, Maska filed for bankruptcy on October 24, 1995, and the suit to recover judgment was not brought until November 1, 1996.

Copeland contends that the plain language of § 4203 means that the one-year limitations period is applicable solely to claims brought by the insured against the insurer, not by third-party judgment creditors. Copeland supports its plain-language interpretation by arguing that subsection (2) is separate from, and unrelated to, subsection (3) because the former lacks any reference to direct actions or third-party claims, and that its only relation to subsection (3) is the happenstance of being one in a series of six conditions that the Legislature requires all insurers to include in the policies they deliver or sell in Vermont. Copeland maintains that the words "loss under this policy" in subsection (2) refer only to the financial detriment suffered by an insured for which the insurer is liable, and the word "recover" preceding them, by definition, means only to get back or regain. Therefore, the limitations period is applicable to those actions brought by the insured to get back or regain the financial detriment that he has suffered, and does not apply to third-party actions seeking payment on a judgment. See *Olds v. General Accident Fire & Life Assurance Corp.*, 155 P.2d 676, 680 (Cal. Dist. Ct. App. 1945) ("The words 'recover' and 'loss under this policy,' in their normal connotation, would seem to refer to actions by the assured after he has paid the judgment. The injured third person does not

suffer a 'loss under this policy' nor is his action to 'recover' such loss. . . . [,] but an action to be reimbursed for damages suffered . . . .").[2] Furthermore, Copeland asserts, reading subsection (2) as applicable to actions brought by third parties would render the operative phrase "loss under this policy" surplusage. See *Trombley v. Bellows Falls Union High School,* 160 Vt. 101, 104, 624 A.2d 857, 860 (1993) (statutes may not be construed so as to render a significant part pure surplusage).

■ Our primary objective in construing a statute is to give effect to the intent of the Legislature. See *In re P.S.,* 167 Vt. 63, 70, 702 A.2d 98, 102 (1997). The first step in determining such intent is to study the language of the statute. See *Brennan v. Town of Colchester,* 169 Vt. 175, 177, 730 A.2d 601, 603 (1999). Our review of the plain language of § 4203 leads to the conclusion that the Legislature intended the one-year limitations period in subsection (2) to govern direct actions brought under subsection (3).

■ First, we are not persuaded by Copeland's argument that subsections (2) and (3) are isolated and unrelated statutory provisions. The Legislature has not amended the language of § 4203 from its original form with the exception of adding subsections (5) and (6). The original act mandated that four conditions be included in liability insurance policies, setting out the conditions one per paragraph. See 1919, No. 155, § 2. In other words, the subsections first appeared as a larger whole that read as one section of the original act, not as four separate and independent subsections. Thus, subsections (2) and (3) were drafted as part of an overall statutory scheme and should be read and construed together.[3] See *Galkin v. Town of Chester,* 168 Vt. 82, 87, 716 A.2d 25, 29 (1998) (statutes in pari materia are to be construed together).

---

[2] *Olds* is distinguishable from the instant case. In *Olds,* the limitations period was established by a provision in the insurance policy and was analyzed along with a direct action statute. See *Olds,* 155 P.2d at 678-79. Here, both the limitations period and the right to direct action are set forth by statute, each provision a part of a larger statutory scheme.

[3] We find this axiom of statutory construction particularly relevant here. Copeland would have us liberally construe subsection (3) in favor of third parties, see *Vincent v. Vermont State Retirement Bd.,* 148 Vt. 531, 536, 536 A.2d 925, 929 (1987) (remedial legislation is to be construed in favor of beneficiary), and strictly construe subsection (2) as applying solely to insureds. See *Marshall v. Town of Brattleboro,* 121 Vt. 417, 419, 160 A.2d 762, 764 (1960) (curtailment of remedy must receive strict construction). Reading the two subsections together, however, is the rule of statutory interpretation that best informs us of the Legislature's intent behind § 4203.

Second, as illustrated by their use in other subsections of § 4203, the Legislature accorded a broader definition to "recover" and "loss" than Copeland argues. For example, subsection (1) sets forth the first condition required of insurance policies: "The company shall pay and satisfy any judgment that may be recovered against the insured upon any claim covered by this policy . . . ." 8 V.S.A. § 4203(1). If a third-party judgment creditor may "recover" the judgment against the insured, we see no reason why it cannot also be said that he can "recover" against the insurer.

While "loss" traditionally has been defined as the amount of an insured's financial detriment that the insurer becomes liable to pay, we believe that the Legislature broadened "loss" to include the financial detriment suffered by a third party. Subsection (3) declares that bankruptcy shall not release the insurance company from "payment of damages for injury sustained or loss occasioned during the life of the policy, and in case of such insolvency or bankruptcy an action may be maintained by the injured person or claimant against the company under the terms of the policy . . . ." *Id.* § 4203(3). This language, particularly the inclusiveness of the phrases "injury sustained *or* loss occasioned" and "injured person *or* claimant," *id.* § 4203(3) (emphasis added), illustrates the Legislature's broad interpretation of the vocabulary employed in the context of liability insurance, as well as the interchangeable nature of words like "loss" and "injury," and "injured person" and "claimant."

This interchangeability, furthermore, does not render operative words of subsection (2) surplusage. Copeland argues by illustration that, had the Legislature intended to include third-party claims within the scope of subsection (2), it would have written the statute by deleting the following underlined words: "No action shall lie against the company *to recover for any loss* under this policy, unless brought within one year after *the amount of such loss is made certain either by* judgment against the insured . . . ." *Id.* § 4203(2). The language emphasized above, however, merely describes a traditional first-party action brought under an insurance policy, which in turn becomes interchangeable with a third-party action under subsection (3). We believe, therefore, that the Legislature used "loss" in subsection (2) to refer to damages suffered by either the insured or an injured third party. Consequently, the plain language of subsection (2) — "[n]o action shall lie against the company to recover for any loss" — applies to third-party actions brought under the direct action provision. *Id.* § 4203(2).

We also note that subsection (2) was not worded so as to apply only to those actions brought upon the policy. Copeland marshals cases in which the phrase "[n]o suit or action on this policy," preceding language setting forth a limitations period, has been interpreted as narrowing the applicability of the limitations period such that it does not include *all* suits. See, e.g., *Stahl v. Preston Mutual Ins. Ass'n*, 517 N.W.2d 201, 203 (Iowa 1994); *Lees v. Middlesex Ins. Co.*, 594 A.2d 952, 956 (Conn. 1991); *Hearn v. Rickenbacker*, 400 N.W.2d 90, 94 (Mich. 1987). Accordingly, Copeland urges us to reject the notion that subsection (2) applies to all suits, including direct actions.

Subsection (2), unlike the language in the cases cited by Copeland, states that "[n]o action shall lie against the company to recover for any loss under this policy." 8 V.S.A. § 4203(2). There is no restriction that actions must be upon the policy; rather, the language is inclusive of all suits seeking recovery. Therefore, we find these cases unpersuasive.

Third, the plain language of subsection (3) — that a direct action "may be maintained by the injured person or claimant against the company *under the terms of the policy*," *id.* § 4203(3) (emphasis added) — grants third parties a derivative right to sue the insurer that is no greater than that of the insured's. "[W]here the injured party is given a right of action 'under the terms of the policy,' he or she must obviously comply with policy terms and conditions or forfeit his or her rights the same as the insured." 7 L. Russ & T. Segalla, Couch on Insurance § 104:39, at 104-62 (3d ed. 1997). Under the derivative-right theory, the third party levying a direct action stands in the same shoes as the insured and with rights equal to, but not greater than, the insured.

■ This Court has long recognized and approved of the derivative nature of third-party rights. For example, we stated, when addressing the question of whether notice of an accident was given as required by an automobile liability insurance policy, that:

> It has been held that notice, given by the injured party as a beneficiary and a party in interest, acting in behalf of the insured, may be a sufficient compliance with the terms of the policy, in the absence of action by the insured. But the notice must be reasonable for, *according to the weight of authority, the injured party stands in the shoes of the insured, and is subject to the provisions of the policy and to any defense which the insurer might have raised against the insured.*

> *This is so whether the right of action is conferred by statute . . . or arises under a clause in the insurance contract,* as it does here, stipulating that a proceeding brought by the injured party against the insurer, after judgment obtained against the insured, shall be "under the terms of this policy."

*Houran v. Preferred Accident Ins. Co.*, 109 Vt. 258, 265-66, 195 A. 253, 255-56 (1938), *overruled in part on other grounds by Cooperative Fire Ins. Ass'n v. White Caps, Inc.*, 166 Vt. 355, 694 A.2d 34 (1997) (emphasis added). When this theory is literally followed, "it is apparent that the claimant is, in effect, merely a transferee of the claim against the insurer and holds the claim subject to each limitation and qualification to which it would be subject if it were asserted by the insured in an action against the insurer." 7 Couch, *supra,* § 104:37, at 104-61. Therefore, since subsection (2) mandates that an insured has only one year in which to bring an action against the insurer, a third party is bound by the same condition.

Our conclusion that Copeland's direct action suit against defendants was subject to the one-year limitations period raises the question: When does the period begin to run? Without answering this question, the lower court concluded that Copeland's suit was nevertheless untimely because Copeland filed it more than one year after both the date on which it received a judgment against Maska and the date on which Maska filed for bankruptcy. Because we arrive at the same conclusion, we need not address this question.

*Affirmed.*