2006 VT 81

## Joan Korda, Executrix of the Estate of Murray Korda and Union Mutual Insurance Company v. Chicago Insurance Company

[908 A.2d 1018]

No. 04-530

Present: Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.

Opinion Filed August 4, 2006

174

*Donald R. Powers* of *Powers & Byers LLP*, Middlebury, for Plaintiff-Appellant Korda.

*F. Brian (Ted) Joslin* and *Laura Q. Pelosi* of *Theriault & Joslin, P.C.*, Montpelier, for Plaintiff-Appellant Union Mutual Insurance Company.

*John B. Webber* and *Timothy Budd* of *Webber, Chapman & Kupferer, Ltd.*, Rutland, and *Alfred C. Constants III* of *Caron, Constants & Wilson*, Rutherford, New Jersey, for Defendant-Appellee.

¶ 1. **Dooley, J.** This case arises from a fatal car accident. Appellants in this case are the Estate of Murray Korda (the Estate) and one of two

uninsured motorist carriers (UIM carriers)[1] who insured Mr. Korda at the time of the accident. Below, the UIM carriers filed suit under the Estate's name with its permission against defendant Chicago Insurance Company (Chicago), the insurer of Champlain Valley Speech and Language Practice, LLC (CVSLP), the company whose employee caused the accident, for failure to defend the underlying lawsuit, which had resulted in a stipulated judgment of $2,000,000 against CVSLP. The lower court dismissed the failure-to-defend case because it found (1) the two-year wrongful-death limitations period, which had run by the time the original complaint was filed, applied to the UIM carriers' subrogation action, and (2) the Estate lacked standing to sue Chicago because CVSLP had not assigned its rights to the Estate until nearly three years after the Estate's suit against Chicago was filed. We conclude the assignment related back to the filing of the Estate's action against Chicago so that the Estate had the capacity to bring the action and did so within the applicable limitations period. We also conclude that the subrogation action was filed within the limitations period of 8 V.S.A. § 4203(2), assuming the allegations of the complaint are proved. We reverse the superior court's dismissal of the action and remand.

¶ 2. The following facts are undisputed. On September 30, 1998, Amy Wyatt, an employee of CVSLP, was driving to see a patient when she struck an oncoming car, killing the driver, Murray Korda. Ms. Wyatt possessed a $20,000 automobile insurance policy, which was paid to Murray Korda's estate.[2] Joan Korda, executrix of the Estate, then looked to CVSLP for further compensation for Mr. Korda's death. At the time of the accident, CVSLP had a liability insurance policy with Chicago. The actual coverage of the policy is at issue in the underlying case. Generally, Chicago disclaimed coverage and refused to defend or indemnify CVSLP.

¶ 3. On July 10, 2000, the Estate sued CVSLP for damages arising out of the wrongful death of Mr. Korda. CVSLP again asked Chicago

---

[1] Only one of the UIM carriers, now named Union Mutual Insurance Company, has joined in the appeal. The relevant decisions in the superior court involved both of the UIM carriers, and the discussion in the text pertains to both carriers. In addition, unless otherwise indicated, we refer to the Estate and the UIM carriers collectively as "plaintiffs."

[2] In exchange for the proceeds from Amy Wyatt's insurer and based on her affidavit indicating that she did not own assets subject to execution of judgment, the Estate gave Ms. Wyatt a covenant not to sue. Ms. Wyatt is no longer a party in this matter.

to defend and indemnify, and Chicago again declined coverage. Thereafter, the Estate and CVSLP entered into a settlement agreement, dated November 2, 2000. The settlement agreement noted that CVSLP was effectively judgment-proof, and the Estate provided CVSLP with a covenant not to execute once CVSLP accepted service of the complaint. The agreement provided for a stipulated judgment in the amount of $2,000,000, but delayed entry of that judgment pending litigation (described below) against two insurance carriers, Champlain Casualty Company of Vermont and Hartford Underwriters Insurance Company, that provided underinsured motorist coverage to Murray Korda. The agreement also contained the following provision:

> 5. Upon final settlement or adjudication of the Estate's claims against Champlain Casualty and Hartford Insurance Company, and upon request of the Estate, or of Champlain Casualty or Hartford Insurance Company as subrogee of the Estate's claims, CVSLP ... will assign [its] ... rights to a claim against Chicago "Insurance Company" for defense and indemnification under the insurance policy ... issued by Chicago "Insurance Company" to CVSLP and CVSLP will also consent to the right to bring suit on such claims in the name of CVSLP. Neither Champlain Casualty nor Hartford Insurance Company shall be permitted to obtain any rights in the Chicago "Insurance Company" Defense/Indemnification Rights unless such insurer first executes and delivers to [CVSLP's counsel] ... a duly executed and authorized covenant [not to execute] .... Any reassignment by the Estate to Champlain Casualty or Hartford Insurance Company of the Chicago "Insurance Company" Defense/Indemnification Rights will not be effective unless and until such insurer first executes and delivers to CVSLP's counsel a covenant as described above. In the event of such assignment(s), CVSLP ... will provide reasonable cooperation to the Estate or its subrogees if such cooperation is required for the Estate or its subrogees to pursue the assigned rights against Chicago "Insurance Company."

Chicago was not a party to the settlement agreement.

¶ 4. Meanwhile, the Estate looked to the two uninsured motorist carriers that insured Murray Korda at the time of the accident, Hartford Underwriters Insurance Company and Champlain Casualty Company of Vermont, predecessor to Union Mutual Insurance, for

coverage. Each of Mr. Korda's UIM policies had a limit of $500,000, and, on February 1, 2001, the Estate settled with each of the UIM carriers for $212,500, for a total of $425,000. The settlement agreement between the Estate and the UIM carriers has a number of relevant provisions, summarized as follows:

(1) the Estate will assign to the UIM carriers its claims against CVSLP and Chicago;

(2) the Estate will obtain the stipulated judgment provided for in the agreement with CVSLP;

(3) the UIM carriers "may prosecute in the name of the Estate and/or CVSLP an action against Chicago "Insurance Company" for all compensatory and other damages ... for which Chicago "Insurance Company" may be liable to the Estate or CVSLP, whether in contract, tort or otherwise";

(4) if the UIM carriers prevail in litigation against Chicago, the proceeds will be split between the Estate and the UIM carriers;

(5) the UIM carriers will execute the covenant not to execute against CVSLP and deliver it to CVSLP's lawyer;

(6) on receipt of the settlement money, the Estate will dismiss the suit against the UIM carriers; and

(7) the Estate will release all claims against the UIM carriers.

Based on the above agreements, a stipulated judgment in the amount of $2,000,000 for the Estate and against CVSLP was entered on October 16, 2001 in the Chittenden Superior Court.

¶ 5. On December 13, 2001, the UIM carriers brought suit in Addison Superior Court in the name of the Estate against Chicago for breach of contract and negligent failure to settle. The complaint did not state how the Estate had standing to bring the action or that the complaint was actually filed by the UIM carriers in the name of the Estate. It did allege that "CVSLP is insolvent," to which Chicago answered that it lacked information to respond.

¶ 6. In October 2003, Chicago moved for summary judgment, seeking a declaration that it owed CVSLP no duty to defend pursuant to a policy exclusion; the Estate opposed this motion and filed a cross-motion for summary judgment.

¶ 7. Before the summary judgment motions on the merits of the coverage issues could be decided, disputes arose over whether the action was properly brought. Chicago first filed a motion claiming that the UIM carriers were the real parties in interest and requesting that they be substituted as plaintiffs. In March 2004, Chicago filed a second summary judgment motion, alleging that: (1) the UIM carriers were bringing suit under an assignment of the Estate's judgment against CVSLP, and the common law prohibited such an assignment; (2) the action was not a subrogation action, and even if it was, it violated Vermont Rule of Civil Procedure 17(c); and (3) the underlying action was the product of collusion and champerty and was unreasonable. In response, plaintiff alleged that it was raising both a breach of contract and a subrogation claim, the assignment was valid because it assigned a breach of contract claim and not a personal injury claim, and the settlement between the Estate and CVSLP was reasonable and did not involve champerty or collusion. In support of its response and to respond to Chicago's motion to name the UIM carriers as parties, the Estate filed a motion to amend its complaint to name the UIM carriers as additional plaintiffs and to explicitly raise a subrogation claim in the name of the carriers. The proposed amended complaint alleged that CVSLP had assigned its rights against Chicago to the Estate on April 6, 2004.

¶ 8. On April 30, 2004, Chicago moved to dismiss, contending the Estate lacked standing to sue until CVSLP assigned its rights against Chicago to the Estate.[3] According to Chicago, CVSLP failed to actually assign its rights until April 6, 2004, nearly three years after the lawsuit was initiated and outside the two-year statute of limitations in wrongful-death actions. In response to plaintiff's motion to amend and explicitly raise subrogation, Chicago also argued the UIM carriers' subrogation action was time-barred.

¶ 9. In its decision, the trial court addressed only Chicago's motion to dismiss and the Estate's motion to amend the complaint to raise a subrogation claim. It did not address any of the motions for summary judgment that were pending. The court addressed three specific issues: (1) whether the subrogation claims of the UIM carriers were time-barred; (2) whether the action against Chicago should be dismissed because neither the Estate nor the UIM carriers had standing to bring

---

[3] Chicago actually moved to dismiss at the end of a memorandum of law filed March 26, 2004, and asserted that no assignment of CVSLP's claim against Chicago had been made.

it; and (3) whether the contract claims against Chicago should be dismissed as barred by the applicable statute of limitations.

¶ 10. On the first issue, the court ruled that the subrogation claim of the UIM carriers against Chicago was governed by the limitations period for wrongful-death actions contained in 14 V.S.A. § 1492(a). Since that limitations period is two years, and the UIM carriers brought suit three years after the 2001 accident, the court held the subrogation action was time-barred. On this basis, it denied plaintiff's motion to amend the complaint to assert the subrogation claim explicitly. On the second issue, the court ruled that "[b]ecause Plaintiff had no assigned rights to sue Chicago at the time the lawsuit was filed, the complaint must be dismissed for lack of standing." On the third issue, the court decided that the relevant statute of limitations on the contract claim was contained in 8 V.S.A. § 4203(2), which provides:

> No action shall lie against the [insurance] company to recover for any loss under th[e] [insurance] policy, unless brought within one year after the amount of such loss is made certain either by judgment against the insured after final determination of the litigation or by agreement between the parties with the written consent of the company.

This statute of limitations, the court concluded, expired in October 2002, one year after the judgment was entered against CVSLP. Since the assignment did not occur until April 2004, the court held that the contract action against Chicago was not filed in time. The court dismissed the complaint, with prejudice.

¶ 11. For the sake of clarity, we start with the second issue: the court's decision to grant Chicago's motion to dismiss because plaintiffs brought their action against Chicago before CVSLP assigned its rights to the Estate so that plaintiffs lacked standing to bring the action.

¶ 12. Plaintiffs put forward two responses on this issue: (1) because CVSLP had a contractual obligation to make the assignment, plaintiffs had an equitable assignment sufficient to allow them to bring suit; and (2) the standing created by the signing of the assignment related back to the filing of the case, such that plaintiffs had standing from the beginning of the action and the case was filed within the applicable statute of limitations. We conclude that the second response is correct, and that the dismissal of the action was erroneous.

■ ¶ 13. A motion to dismiss for failure to state a claim upon which relief can be granted should be denied unless it is beyond doubt that there exist no facts or circumstances that would entitle the plaintiff to relief. *Union Mut. Fire Ins. Co. v. Joerg*, 2003 VT 27, ¶ 4, 175 Vt. 196, 824 A.2d 586. When reviewing the disposition of a motion to dismiss, "this Court assumes that all factual allegations pleaded in the complaint are true. . . . We accept as true all reasonable inferences that may be derived from plaintiff's pleadings and assume that all contravening assertions in defendant's pleadings are false." *Richards v. Town of Norwich*, 169 Vt. 44, 48-49, 726 A.2d 81, 85 (1999).

¶ 14. Although the parties have characterized the issue as one of standing, the issue is really one of capacity. Chicago argued successfully below that the Estate and the UIM carriers were the wrong parties to bring the suit; under Chicago's theory, the suit had to be brought by CVSLP until it assigned its right to bring suit to the Estate or the UIM carriers. Under this theory, if the assignment had occurred before the suit was filed, the assignees would have had the capacity to bring the suit assuming a valid assignment. Conversely, because the assignment occurred after the suit had commenced and the statute of limitations had run, the assignees lacked capacity when the suit was initiated and did not gain capacity until after the suit was time-barred.

¶ 15. Although Chicago's theory was once viable in most jurisdictions, it is now overwhelmingly rejected in jurisdictions, like Vermont, that have adopted rules based on the Federal Rules of Civil Procedure. Two rules are particularly applicable. Vermont Rule of Civil Procedure 17(a), entitled "Real Party in Interest", which is based on Federal Rule 17(a), Reporter's Notes, V.R.C.P. 17, requires that an action "be prosecuted in the name of the real party in interest," but goes on to provide:

> No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

The last phrase of the rule makes clear that the correction of the real-party-in-interest deficiency relates back to the commencement of the action. It is consistent with Rule 15(c), also based on the federal

analogue, see Reporter's Notes, V.R.C.P. 15, on relation back of amendments to pleadings:

> (c) **Relation Back of Amendments.** An amendment of a pleading relates back to the date of the original pleading when
>
> . . . .
>
> (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or
>
> (3) the amendment changes the party or the naming of the party against whom a claim is asserted if the condition of paragraph (2) of this subdivision is satisfied and, within the period provided by Rule 3 for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

V.R.C.P. 15(c).[4] Also relevant is the direction of Rule 15(a) that leave to amend a pleading should "be freely given when justice so requires." The relation back doctrine normally controls when an action is commenced for purposes of the statute of limitations: "Rule 15(c) is grounded on the notion that a party who has been notified of litigation concerning a given transaction has been accorded all the notice that

---

[4] Rule 15 is usually implicated in cases like this because the plaintiff attempts to amend the complaint to allege the new capacity to sue. That is exactly what happened here — the Estate alleged that it had received the assignment in the proposed amended complaint. A complaint amendment is not required in these instances, however, because a plaintiff is not required to allege the capacity to sue; instead it is defendant's obligation to allege lack of capacity. See V.R.C.P. 9(a) ("It is not necessary to aver the capacity of a party to sue or be sued . . . ."). In fact, lack of capacity to sue was not alleged either generally or specifically in this case, and plaintiff had no obligation to amend the complaint to allege the newly-created capacity. Thus, we rely on Rule 15 less for its literal application and more for its expression of the policy on relation back.

statutes of limitations are intended to afford." *Hojaboom v. Town of Swanton*, 141 Vt. 43, 51, 442 A.2d 1301, 1305 (1982).

■ ¶ 16. Here, the Estate lacked capacity to sue when it filed the complaint, but acquired it later by obtaining the assignment just before Chicago filed the motion to dismiss. As the Supreme Court of Washington held in *Beal v. City of Seattle*, 954 P.2d 237, 241 (Wash. 1998), the plain language of the last sentence of Washington's identical Rule 17(a) applies to give a plaintiff the opportunity to correct the real-party-in-interest deficiency before the action is dismissed. Moreover, under Rule 17(a), and applying the considerations expressed in Rule 15(c), the acquiring of capacity relates back to the filing of the action and avoids any statute of limitations concern caused by the lack of capacity when the action was filed. *Id.* at 244. Many courts have now adopted this holding. See, e.g., *Flores v. Cameron County, Tex.*, 92 F.3d 258, 272-73 (5th Cir. 1996); *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 614 (4th Cir. 1980); *Shinkle v. Union City Body Co.*, 94 F.R.D. 631, 638 (D. Kan. 1982); *Burcl v. N.C. Baptist Hosp., Inc.*, 293 S.E.2d 85, 93-94 (N.C. 1982); *Thomas v. Grayson*, 456 S.E.2d 377, 380 (S.C. 1995); *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 853 (Tex. 2005). As the Supreme Court of North Carolina explained:

> Defendants had full notice of the transactions and occurrences upon which this wrongful death claim is based when the claim was originally filed within the period of limitations . . . . They can in no way be prejudiced by allowing plaintiff by supplemental pleading to show the change in her capacity . . . even though this change occurred after the period of limitations had run. The purpose served by the statute of limitations — protection against stale claims — is in no way compromised by allowing such a pleading to relate back to the action's commencement. To hold otherwise would be to return to hypertechnical pleading restrictions inimical to just resolution of disputed claims, restrictions which our present rules of pleading were designed to overcome.

*Burcl*, 293 S.E.2d at 95. We agree with this reasoning and hold that where, as here, a plaintiff acquires capacity to sue after the suit is filed, and before the action is dismissed for lack of capacity, the acquisition of capacity relates back to the filing of the action for all purposes, including compliance with the statute of limitations. Under this holding, the superior court erred in dismissing the action against Chicago because plaintiff did not have an assignment from CVSLP at the time

of the filing of the action. The court also erred in denying plaintiffs' motion to amend to allege the assignment.

¶ 17. In addition, the superior court ruled that the contract action was governed by the statute of limitations in 8 V.S.A. § 4203(2): "No action shall lie against the company to recover for any loss under th[e] policy, unless brought within one year after the amount of such loss is made certain ... by judgment against the insured after final determination of the litigation ...." The court held that because plaintiff did not obtain the assignment within a year after the judgment against CVSLP was filed, the one-year limitations period specified in that section bars the action. Plaintiff argues for a longer limitations period, but we need not decide that issue.[5] The action against Chicago was filed within two months after the Estate obtained a judgment against CVSLP, and that date governs for statute of limitations purposes. Accordingly, the filing was well within any applicable limitations period, and the superior court erred in dismissing the complaint on statute of limitations grounds.

¶ 18. We now turn to the superior court's holding that the UIM carriers' subrogation claims, asserted implicitly in the original complaint and explicitly in the proposed amended complaint, are barred by the statute of limitations for wrongful death actions contained in 14 V.S.A. § 1492(a), which requires that an action be filed within two years from the discovery of the death of the deceased person. Because Murray Korda died in 1998, and the Estate did not sue Chicago until 2001, the court ruled the action fell outside the limitations period.

¶ 19. Although the court dismissed the action on the theory set out above, it reached out to decide this subrogation limitations claim, apparently because it concluded the UIM carriers still had a valid, albeit untimely, subrogation claim despite the ineffectiveness of the late assignments. Although we found the assignments to be timely, we note that Chicago challenges the assignments on other grounds that we do not now address. Therefore, we also reach this statute of limitations issue because if the assignments are at some point held invalid, the

---

[5] The Estate argues that § 4203(2) does not apply because CVSLP purchased its insurance policy through a professional purchasing group under federal law. It argues that the longer six-year limitations period in 12 V.S.A. § 511 controls instead. We do not reach that argument because the Estate met the shorter limitations period in § 4203(2).

UIM carriers can go forward alternatively based on their right to subrogation.

¶ 20. In reaching its conclusion, the superior court relied upon cases in which a subrogated insurance carrier sued the tortfeasor but initiated the suit beyond the limitations period for the injured party to sue. The superior court found that the weight of authority from other jurisdictions placed the subrogated carrier in the position of the injured party for statute of limitations purposes. Thus, the court held that if the estate of the deceased was subject to the two-year limitations period of 14 V.S.A. § 1492(a), the subrogated UIM carriers were subject to the same limitation.

¶ 21. The case at bar, however, is different from those relied upon by the trial court. Here, the Estate brought suit against the employer of the alleged tortfeasor within the wrongful-death limitations period and obtained a judgment. The carriers that are subrogated to the claims of the Estate are suing the employer's insurance carrier, alleging the employer's carrier is responsible to pay the wrongful-death damages of the Estate. Like the claims based on the assignment, these claims are covered by the limitations period in 8 V.S.A. § 4203(2).[6] As explained above, plaintiffs met the demands of § 4203(2) because they sued Chicago within two months of obtaining the judgment against CVSLP.

¶ 22. The UIM carriers' limited right of subrogation is created by statute. 23 V.S.A. § 941(e) ("If payment is made under uninsured motorist coverage, . . . to the extent of that payment, the insurer is entitled to the proceeds of any . . . recovery from any person legally responsible for the damage or personal injury . . . ."). It is limited because the carrier can obtain reimbursement only after the injured party is fully compensated:

> A UM carrier is therefore entitled to reimbursement for payments it makes to an accident victim to the extent the victim's total recovery from all sources exceeds his or her damages; the carrier is entitled to no reduction of UM coverage, however, where the victim is not fully compensated.

*Bradley v. H.A. Manosh Corp.*, 157 Vt. 477, 485, 601 A.2d 978, 984 (1991). Subrogation is the substitution of a person for a creditor to

---

[6] As with the earlier issue, the Estate argues that under federal law a longer limitations period applies. Because we conclude that plaintiffs met the shorter limitations period in § 4203(2), we need not address plaintiffs' alternative argument.

whose rights the substitute succeeds in relation to the debt, and it gives the creditor "all the rights, priorities, remedies, liens, and securities of the person for whom he or she is substituted." 16 L. Russ & T. Segalla, Couch on Insurance 3d § 222.5, at 222-18 (3d ed. 2000) [hereinafter Couch]. Subrogation "enables a secondarily liable party who has been compelled to pay a debt to be made whole by collecting that debt from the primarily liable party, who, in good conscience, should be required to pay." *Nationwide Mut. Fire Ins. Co. v. Gamelin*, 173 Vt. 45, 52, 786 A.2d 1078, 1084 (2001). The purpose of subrogation is purely equitable. *Id.*

¶ 23. The situation before us was addressed in part in *T. Copeland & Sons, Inc. v. Kansa General Insurance Co.*, 171 Vt. 189, 762 A.2d 471 (2000). There, a company sued an adjoining landowner company alleging the defendant's actions had contaminated the plaintiff company's property. The plaintiff obtained a judgment, and, after the bankruptcy of the defendant, sued defendant's insurance carrier to cover the loss, but brought the action beyond the one-year limitations period set out in 8 V.S.A. § 4203(2). Plaintiff argued that § 4203(2) applied only to actions between the insured and the insurer, and not to "third-party actions seeking payment on a judgment." *Id.* at 192, 762 A.2d at 472. In rejecting that argument, we described the applicability of § 4203(2) as follows:

> If a third-party judgment creditor may "recover" the judgment against the insured, we see no reason why it cannot also be said that he can "recover" against the insurer.
>
> While "loss" traditionally has been defined as the amount of an insured's financial detriment that the insurer becomes liable to pay, we believe that the Legislature broadened "loss" to include the financial detriment suffered by a third party. . . .
>
> . . . We believe, therefore, that the Legislature used "loss" in subsection (2) to refer to damages suffered by either the insured or an injured third party. Consequently, the plain language of subsection (2) — "[n]o action shall lie against the company to recover for any loss" — applies to third-party actions brought under the direct action provision. *Id.* § 4203(2).

*Id.* at 194, 762 A.2d at 474 (alteration in original).

186

■ ¶ 24. Under *Copeland*, if the UIM carriers' subrogation claims involve "financial detriment suffered by a third party," *id.*, and particularly if they involve "third-party actions brought under the direct action provision," *id.*, § 4203(2) applies to these claims. The subrogated UIM carriers in this case have suffered financial detriment as a result of Chicago's denial of coverage. Therefore, their claim that Chicago breached its insurance contract in denying coverage is subject to § 4203(2).

■ ¶ 25. This conclusion is reinforced by the fact that Vermont's direct action statute — 8 V.S.A. § 4203(3), the adjoining subsection to that containing the applicable statute of limitations — applies to the UIM carriers' subrogation claims. In general, direct actions against the insurer by persons other than the insured are prohibited because of the absence of privity of contract. See 7A Couch, *supra*, § 104:2, at 104-10 to 104-12 (1997). We need not decide in this case whether we would deviate from that generality as a matter of contract law because here the Legislature has supplied an applicable statutory right in § 4203(3):

> The insolvency or bankruptcy of the insured shall not release the company from the payment of damages for injury sustained or loss occasioned during the life of the policy, and in case of such insolvency or bankruptcy an action may be maintained by the injured person or claimant against the company under the terms of the policy, for the amount of any judgment obtained against the insured not exceeding the limits of the policy.

8 V.S.A. § 4203(3); see also 7A Couch, *supra*, § 104:7, at 104-20 to 104-21 ("The absence of privity is no bar to a direct action against a liability insurer where there is a statute or contract clause giving the injured person a direct action right; . . . such statute . . . creates a separate cause of action by reason of the insurance contract."). As we said in *Copeland*, "subsection (3) created an avenue through which injured parties could directly sue insurance carriers if the insured is insolvent or bankrupt." *Copeland*, 171 Vt. at 192, 762 A.2d at 472. In fact, the language of the statute is broader; it allows suit to be maintained by a "claimant against the company under the terms of the policy." § 4203(3). Under the plain meaning of the statutory section, the UIM carriers can bring a direct action against Chicago if its insured, CVSLP, was insolvent when the direct action was filed. In the initial complaint in this case, plaintiffs alleged that CVSLP was insolvent, the trigger that would make § 4203(3) applicable. Assuming plaintiffs can

prove their allegations, § 4203(3) is applicable to their action. The applicability of subsection (3) to allow a direct action against the insurance company reinforces that the limitations period in subsection (2) applies.

¶ 26. We recognize that, just as it argued in relation to the assignment, Chicago argues the UIM carriers have not alleged that they were enforcing their own subrogation rights and the attempt to amend the complaint to do so came too late under the one-year limit of § 4203(2). We note, however, that the UIM carriers were able to bring the action in the name of the Estate. See V.R.C.P. 17(a) ("An insurer who has paid all or part of a loss may sue in the name of the assured to whose rights it is subrogated."); see also 17 Couch, *supra*, § 241:56, at 241-77 (3d ed. 2000) (observing that suit can be brought in name of insured, instead of subrogee, because defendant is protected from multiple liability when judgment will be bar to any further proceeding against defendant). There is no requirement that the subrogee must specify in the complaint that they are bringing the action in the name of the insured. Thus, we conclude that the complaint was sufficient to raise the subrogation claims. See, e.g., *George L. Schnader, Jr., Inc. v. Cole Bldg. Co.*, 202 A.2d 326, 330 (Md. 1964) (holding that, although pleadings did not specifically claim right to subrogation, appellant was entitled to recover as subrogee because essential elements necessary for application were alleged, "albeit somewhat ineptly," in pleadings and established during trial). Moreover, Chicago had *actual notice* of the UIM carriers' subrogation claim. Defendant not only deposed the UIM carriers' adjusters, it engaged in discovery with the UIM carriers and participated in a mediation session with the UIM carriers and the Estate. See *Low v. Golden Eagle Ins. Co.*, 125 Cal. Rptr. 2d 155, 164 (Ct. App. 2002) (allowing subrogation claim even though not appropriately pled because otherwise "party who had actual notice could hide behind one plaintiff's pleading flaw to avoid paying the full extent of damages claimed by another").

¶ 27. Finally, for exactly the same reasons that we held the Estate could amend the complaint to allege the after-acquired assignment, and that allegation related back to the filing of the action, the UIM carriers could amend the complaint to enter as parties, see Reporter's Notes, V.R.C.P. 17 (recognizing that insurer may sue in its own name), and specify their subrogation claims, effective as of the original filing of the action. See also *Transport Int'l Pool, Inc. v. Pat Salmon & Sons of Fla., Inc.*, 609 So. 2d 658, 663-64 (Fla. Dist. Ct. App. 1992) (holding that

although plaintiff did not plead subrogation in amended complaint, court should have allowed cause of action that was fully supported by the record, where defendants were not prejudiced because subrogation was not dependent on new facts); *Nebraska Beef, Ltd. v. Universal Sur. Co.*, 607 N.W.2d 227, 235-36 (Neb. Ct. App. 2000) (holding that although subrogation should generally be pled, trial court abused its discretion in failing to allow plaintiff to amend complaint to state cause of action based on subrogation).

■ ¶ 28. Chicago further argues that the UIM carriers cannot assert subrogation claims because they failed to abide by the requirements of V.R.C.P. 17(c):

> No claim or counterclaim shall be asserted on behalf of an insurer in the name of the assured for damages resulting from alleged wrongful acts, claimed by right of subrogation or assignment, unless at least 10 days prior to asserting such claim the insurer gives notice in writing to the assured of its intention to do so. Such notice shall be served in the manner provided for service of summons in Rule 4 or by registered or certified mail, return receipt requested, with instructions to deliver to addressee only. There shall be attached to the pleading asserting such subrogation claim a copy of the notice together with either the return of the person making the service or the return receipt.

The rule was enacted, however, not for the protection of insurers, but to protect the injured party from losing the ability to file a later suit if a subrogation suit has been brought in the insured's name without the injured party's knowledge. Reporter's Notes, V.R.C.P. 17. Although the UIM carriers did not comply with the Rule 17(c) procedure, its purpose was fully implemented by the settlement agreement between the Estate and UIM carriers, see *supra*, ¶ 5. We note that the Estate, which is represented by separate counsel in this Court and joined independently through counsel on the motion to amend the complaint, has not claimed a Rule 17(c) violation. Thus, the Estate was aware of the action and actively assisted in its prosecution. Even if we allowed Chicago to take advantage of a violation of Rule 17(c) that is not claimed by the beneficiary of the rule's provisions, here the Estate, we find any error harmless. See V.R.C.P. 61 ("The court at every stage of the proceeding must disregard any error or defect . . . which does not affect the substantial rights of the parties.").

¶ 29. For the above reasons, we find that each of the rulings the superior court made in support of its decision to dismiss the complaint was erroneous. Plaintiffs are entitled to go forward with this case under their amended complaint.

*Reversed and remanded.*