Citibank, N.A., as Trustee for the MLMI Trust Series 2006-HE5 v. Mumley, No. S1087-09 CnC (Toor, J., Sept. 1, 2011)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

VERMONT SUPERIOR COURT
CHITTENDEN UNIT
CIVIL DIVISION

| | |
|---|---|
| CITIBANK, N.A., AS TRUSTEE FOR THE MLMI TRUST SERIES 2006-HE5<br> Plaintiff<br><br>v.<br><br>GEORGE R. MUMLEY, JR., and STACEY L. MUMLEY, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS), AS NOMINEE FOR FIELDSTONE MORTGAGE COMPANY, ESTATE OF JANICE C. GINGRAS, AND ANY OTHER OCCUPANTS OF 852 ROUTE 7 SOUTH, MILTON, VERMONT<br> Defendants | Docket No. S1087-09 CnC |

## RULING ON MOTION TO VACATE JUDGMENT AND ON MOTION FOR SANCTIONS

In this foreclosure case, Defendants George and Stacey Mumley (Defendants) have filed a motion for sanctions against Plaintiff Citibank, N.A., as trustee for the MLMI Trust Series 2006-HE5 (Citibank), on the grounds that Citibank failed to comply with the requirements of the foreclosure mediation statute. Pursuant to V.R.C.P. 60(b), Defendants have also filed a motion to vacate the March 9, 2010 Judgment Order and Decree of Foreclosure by Judicial Sale. Citibank opposes both motions. Grant C. Rees, Esq. represents Citibank; Grace B Pazdan, Esq. represents Defendants.

I.  Procedural History

Plaintiff Citibank, N.A. (Citibank) filed its complaint for foreclosure in this case on August 25, 2009.[1] The complaint alleged that Defendants had executed a promissory note in favor of Fieldstone Mortgage Company, and included a copy of an "Adjustable Rate Note" (the Note) as Exhibit 1. The Note identifies the "Lender" as Fieldstone Mortgage Company (Fieldstone). The Note does not contain any endorsement either to Citibank or in blank. The complaint also alleged that the Note is secured by a mortgage deed to Mortgage Electronic Registration Systems, Inc. (MERS) as "nominee" for Fieldstone. The complaint goes on to allege that MERS assigned the Note and the mortgage deed to Citibank by an Assignment dated August 20, 2009.

On February 5, 2010, this court granted Citibank's motion for default judgment and issuance of a clerk's accounting. On March 9, 2010, the court issued a Judgment Order and Decree of Foreclosure by Judicial Sale. On July 16, 2010, Defendant Stacey Mumley filed a request for foreclosure mediation pursuant to 12 V.S.A. § 4632.[2] On July 23, 2010, the court sent a letter to the parties requiring them to confer and agree on a mediator. In an entry filed on November 1, 2010, the court stayed action on Citibank's motion for issuance of a certificate of non-redemption due to the ongoing mediation.

On March 2, 2011, Stacey Mumley filed a letter seeking a sanction against Citibank, alleging that no one from Citibank participated in the mediation scheduled for September 23,

---

[1] The court granted Citibank's November 24, 2009 motion to amend the complaint to substitute the Estate of Janice C. Gingras (the Estate) for Defendant Janice C. Gingras. The Estate filed an answer on December 15, 2009 asserting that Janice Gingras was dissolved of the Mortgage deed between George R. Mumley, Jr. and Stacey L. Mumley shortly after the purchase of the property.

[2] Vermont's Foreclosure Mediation Statute, 12 V.S.A. §§ 4631–4637, became effective on July 1, 2010. On certain conditions that were met in this case, the new legislation explicitly requires mediation in foreclosure actions even after judgment has been entered. *See* id. § 4636 ("The court shall, on request of a party prior to judgment or on request of a party and showing of good cause after judgment, require mediation in any foreclosure action on a mortgage on any dwelling house of four units or less that is occupied by the owner as a principal residence that was commenced prior to the effective date of this subchapter but only up to 30 days prior to the end of the redemption period.").

2010. She further alleged that shortly after the scheduled mediation, Defendants received a letter indicating that given the recent nationwide events surrounding Bank of America and its mortgage practices, the mortgage servicer would be suspending mediation. She asserted that the mediator contacted Defendants in January 2011 to recommence mediation and set a February 16 deadline for Citibank to respond, but Citibank did not do so.

The mediator filed a mediation report on March 9, 2011, stating that no settlement was reached. The report indicates that neither the mortgagee nor the mortgage servicer were present, although Attorney Rees was present as mortgagee's counsel. The report also indicates that there was no one present with authority to agree to a proposed settlement, loan modification, or dismissal of the foreclosure action, nor was there real-time access to the mortgagors' account information or records relating to consideration of the Home Affordable Modification Program (HAMP). Finally, the report states that (1) the lender's representative failed to attend the mediation; (2) the lender failed to mediate in good faith by failing to attend and by failing to participate in any subsequent mediation session; and (3) the lender failed to provide the documentation required by the Foreclosure Mediation Statute.

Attorney Pazdan entered her appearance for Defendants on April 11, 2011, and filed a supplemental motion for sanctions. The court held a hearing on the mediator's report and on the request for sanctions on April 13, 2011. On May 2, Defendants filed a motion to vacate the judgment.

II. Defendants' Motion to Vacate

3

Defendants' motion to vacate is filed pursuant to V.R.C.P. 60(b)(4), (5), and (6).[3] The court discusses each potential ground for relief from judgment in turn.

---

[3] Defendants initially sought relief pursuant to V.R.C.P. 60(b)(1) (excusable neglect), but now concede that that excusable neglect cannot form the basis for relief from judgment in this case because their motion was filed on May 2, 2011—more than one year from the date of judgment.

## A. Rule 60(b)(4): Standing

In their motion to vacate, Defendants assert that Citibank failed to plead or establish standing to foreclose on their home. They argue that, at most, Citibank alleged that MERS had assigned the mortgage to Citibank, but that such an assignment is legally insufficient to transfer ownership of a mortgage note. In opposition, Citibank contends that its complaint was "typical" of foreclosure complaints filed in Vermont prior to events that had brought current issues of foreclosure to the forefront. Citibank argues that Defendants' standing claim "dissipate[s]" because Citibank can, in its opposition to Defendants' motion, show a chain of possession and negotiation of the Note. Citibank also argues that it should be permitted to correct any deficiency pursuant to V.R.C.P. 17 and Korda v. Chicago Insurance Co., 2006 VT 81, ¶ 16, 180 Vt. 173.

Specifically, Citibank asserts that a "client imaging system" contained more than one copy of the Note: one included a stamped blank endorsement from Fieldstone and one did not. Citibank acknowledges that it attached the un-endorsed version to its complaint. Attached to Citibank's opposition is what appears to be the same document, except that it bears an endorsement in blank. There is no indication as to the date of the endorsement. Citibank has also attached the affidavit of Justin Wilson, a "Litigation Specialist" with Citibank's servicer BAC Home Loans Servicing (BAC), who states he has personal knowledge of the servicing of the Defendants' loan based on his review of books and records kept in the course of BAC's business. Wilson says that Citibank is in possession of the original Note and that the Note was endorsed in blank in conjunction with a Pooling and Servicing Agreement. Wilson says that Citibank is in possession of the original Note and that the Note was endorsed in blank in conjunction with a Pooling and Servicing Agreement on September 1, 2006.

5

In a reply filed May 27, 2011, Defendants argue that the foreclosure judgment against them is void because Citibank did not have standing to foreclose. Defendants maintain that Citibank has presented no evidence that it was the holder of the note at the time it filed its complaint. Defendants argue that Wilson cannot have personal knowledge of Citibank's alleged acquisition of the Note in September 2006 because BAC was not involved with the mortgage loan until May 2010. Defendants conclude that the judgment should be vacated pursuant to V.R.C.P. 60(b)(4). In a letter filed August 1, 2011, Defendants call the court's attention to the recent decision in U.S. Bank National Ass'n v. Kimball, 2011 VT 81.

Although this case involves a number of factual circumstances similar to those in Kimball, there is one significant difference: the issue of standing in Kimball was raised in a motion for summary judgment prior to the entry of judgment. In this case, by contrast, a final judgment has already been entered. Defendants move to vacate that judgment pursuant to V.R.C.P. 60(b)(4) on the grounds that Citibank was not entitled to enforce the Note at the time it brought its complaint and therefore lacked standing, thus depriving the court of jurisdiction and rendering the judgment void.

Whatever the merits of Defendants' claim that Citibank was not entitled to enforce the Note when it brought its complaint, Defendants cannot now collaterally attack the March 9, 2010 judgment on jurisdictional grounds. *See* Nemaizer v. Baker, 793 F.2d 58, 65 (2d Cir. 1986) ("Even if a court does not expressly rule on matters relating to its exercise of jurisdiction, if the parties *could* have challenged the court's power to hear a case, then *res judicata* principles serve to bar them from later challenging it collaterally."); Donley v. Donley, 165 Vt. 619, 620 (1996) (mem.) ("A judgment is not void on standing or jurisdictional grounds when a party had a prior opportunity to contest on those grounds but failed to do so."); 11 Wright, Miller, Kane &

Marcus, Federal Practice and Procedure: Civil 3d § 2862 ("[A] court's determination that it has jurisdiction of the subject matter is binding on that issue, if the jurisdictional question actually was litigated and decided, or if a party had an opportunity to contest subject-matter jurisdiction and failed to do so." (footnotes omitted)); 13B Wright et al., Federal Practice and Procedure: Juris. 3d § 3531.15 ("[I]t is possible that a final judgment might be subject to a motion to vacate or collateral attack for want of standing. Ordinarily such attacks should be rejected, even if the Article III requirements of standing were not met. Other defects of federal subject-matter jurisdiction do not establish that a judgment is void, and standing should be no different." (footnotes omitted)). The court therefore does not reach Citibank's argument premised on V.R.C.P. 17 and Korda.[4]

### B. Rules 60(b)(5) and 60(b)(6): Alleged Injustice

Defendants argue that they are entitled to relief from judgment under V.R.C.P. 60(b)(5) and 60(b)(6) because they say that Citibank's servicing agents willfully violated the federal HAMP guidelines and Vermont's Foreclosure Mediation Statute. Citibank maintains that allegations of improper participation in the HAMP mediation process are insufficient to warrant vacating the judgment because Defendants have made no showing that they are eligible for a HAMP loan modification and because Defendants have themselves refused to participate in mediation and have taken actions calculated to frustrate a proper HAMP resolution. Citibank also asserts that Defendants' argument regarding Citibank's allege failure to participate in HAMP mediation pursuant to Vermont's Foreclosure Mediation Statute fails because (1) there is no cause of action afforded to borrowers under HAMP and (2) the federal HAMP program preempts the Vermont Mediation Statutes. In reply, Defendants contend that they do not seek

---

[4] The court does note, however, that the Kimball Court seemed to suggest that such an argument might gain traction where, unlike in that case, the mortgagee does not squander its opportunity to raise it. *See* Kimball, 2011 VT 81, ¶ 19.

7

redress under HAMP, and that HAMP explicitly requires participating servicers to comply with all federal, state and local laws related to HAMP.

Although Defendants seek relief under both V.R.C.P. 60(b)(5) and 60(b)(6), it is not clear that Rule 60(b)(5) applies in this case. *See* Annotation, Construction and Application of Rule 60(b)(5) of Federal Rules of Civil Procedure, Authorizing Relief from Final Judgment where its Prospective Application is Inequitable, 117 A.L.R. Fed. 419, § 6[c] (1994) (collecting cases in which courts held that judgments or orders requiring forfeiture or foreclosure are not prospective, and hence are not subject to review under the inequitable–prospective–application clause of Rule 60(b)(5) of the Federal Rules of Civil Procedure). Even assuming that Rule 60(b)(5) does apply, however, Defendants' "injustice" argument is the same under both Rule 60(b)(5) and 60(b)(6), and thus it makes sense to perform the analysis under the latter subsection.

Under Rule 60(b)(6), relief from judgment is available for "any other reason justifying relief from the operation of the judgment." V.R.C.P. 60(b)(6). This is a "catch-all provision" that is "designed to give the court flexibility to see that the rule serves the ends of justice." Reporter's Notes, V.R.C.P. 60. The rule "is intended to prevent hardship or injustice and thus [is] to be liberally construed and applied." Sandgate Sch. Dist. v. Cate, 2005 VT 88, ¶ 7, 178 Vt. 625 (mem.) (internal quotation omitted). On the other hand, out of concern for certainty and finality of judgments, there are limits on when relief is available. Richwagen v. Richwagen, 153 Vt. 1, 4 (1989). Thus Rule 60(b)(6) may not be used to relieve a party from a free, calculated, and deliberate choice. Sandgate, 2005 VT 88, ¶ 7. Rule 60(b)(6) is to be used "sparingly" to accomplish justice in "extraordinary situations." Riehle v. Tudhope, 171 Vt. 626, 627 (2000) (mem.).

The court concludes that this is not such an "extraordinary situation." Defendants seek to vacate the judgment on equitable grounds because they say that Citibank has failed to participate in mandatory mediation. Defs.' Reply at 5 (filed May 27, 2011). Vermont statutory law already provides a process for addressing noncompliance with Vermont law governing mediation in foreclosure actions. *See* 12 V.S.A. § 4635. Indeed, Defendants simultaneously seek sanctions pursuant to § 4635. The court believes the allegations of noncompliance and any remedy for such noncompliance should be analyzed under the framework of § 4635. The court therefore turns now to that analysis.

### III. Defendants' Motion for Sanctions

The court begins with some additional factual background drawn from the parties' competing motions on the issue of sanctions. After Stacey Mumley filed a request for foreclosure mediation, the parties agreed to use Brian P. Hehir, Esq. as mediator. Mediation was scheduled for September 23, 2010. On September 13, 2010, Defendants sent the financial documents required by statute to the mediator. Defendants went to the September 23 mediation session, as did the mediator and Attorney Rees. At that session, Attorney Rees informed Defendants and the mediator that he had been unable to secure a representative of his client with settlement authority to participate in the mediation session. As a result, the parties agreed to reschedule the session. Defendants worked with the mediator to try to reschedule the mediation session, but Citibank declined to participate in any subsequent mediation.

On or about February 23, 2011, Citibank's servicing agent, BAC Home Loans, sent Defendants a HAMP denial letter. The letter stated that Defendants were not eligible for a HAMP loan modification because "[b]ased on the NPV results the owner of your loan has not approved a modification." Defendants assert that BAC Home Loans used several incorrect

9

figures in the HAMP-related net-present-value (NPV) test that it ran, and that the use of incorrect NPV inputs likely skewed the NPV test results in favor of foreclosure and against loan modification.

In a letter dated April 23, 2011, BAC Home Loans Servicing wrote to the Mumleys advising them to disregard the February 23, 2011 letter because it contained incorrect information. With the errors allegedly fixed, BAC Home Loans sent Defendants a revised HAMP denial letter, also dated April 23, 2011, which again concluded that Defendants were not eligible because "[b]ased on the NPV results the owner of your loan has not approved a modification." Defendants did not appeal the April 23 denial. Citibank asserts that Defendants have not disputed the information contained in the April 23 denial. Defendants maintain that the NPV inputs used in the corrected NPV test are still faulty. Defendants believe that they would qualify for a HAMP loan modification if BAC Home Loans used the correct inputs, including a lower arrearage to account for what Defendants say is BAC's unjustified delay in processing the application.

On May 4, 2011, Attorney Rees emailed Attorney Pazdan and requested an opportunity to participate in a further attempt to achieve a mediated resolution either through a proper and thorough HAMP analysis or through another "in house" program. On May 5, 2011, Attorney Pazdan emailed attorney Rees and stated that "[t]he Mumleys are not interested in mediation given the tortured history of this case. If your clients want to make a reasonable loan modification offer, they would consider it."

Defendants argue that they have been seriously prejudiced by Citibank's failure to participate in the statutorily-mandated foreclosure mediation process, resulting in delay of their HAMP application and accrued interest, fees, and costs, a reduction in the likelihood that they

will qualify for a HAMP loan modification or other foreclosure prevention options, and an increased difficulty in curing their mortgage default. They also assert that Citibank's failure to participate in mediation meant they did not have an opportunity to correct alleged inaccuracies in the NPV test inputs. Defendants seek one of two sets of relief. The first set or relief they seek consists of (1) an order requiring Citibank to reduce their mortgage arrears by one-half; (2) an order requiring Citibank to modify their mortgage note according to the HAMP guidelines; and (3) attorney's fees and costs. Alternatively, Defendants seek (1) an order tolling interest, fees and costs on their account after September 23, 2010 and an order requiring the parties to participate in foreclosure mediation.

Citibank acknowledges that the HAMP evaluation process was protracted, but argues that sanctions are not available to Defendants because (1) Defendants have unclean hands because Defendants refused to participate in the very mediation process that they now demand; (2) no cause of action inures to Defendants under HAMP; and (3) Vermont's statutes addressing HAMP mediation are preempted by the federal HAMP program. In reply, Defendants argue that: (1) they rejected Citibank's most recent offer to mediate because Citibank's servicing agent had consistently failed to follow through on its obligations under HAMP and its obligation to participate in mediation, and Defendants did not believe Citibank would actually engage in mediation in a timely manner and in accordance with the statute; (2) Defendants seek sanctions under 12 V.S.A. § 4635 and are not raising a cause of action under HAMP; and (3) HAMP explicitly requires participating servicers to comply with all federal, state and local laws related to HAMP.

The court concludes that sanctions are available to Defendants. Under Vermont law, the court may impose sanctions if the court makes a determination of noncompliance or if the

11

mediator's report includes a statement under 12 V.S.A. § 4634(b)(6)[5] that a person required to attend the mediation failed to attend, make a good faith effort to mediate, or supply required documentation. *See* 12 V.S.A. § 4635(b). Both of those conditions are met in this case. Here, the court need not hold a hearing to determine that the mortgagee and servicer did not comply with the obligations under 12 V.S.A. § 4633(a). It is undisputed that Citibank did not use or consider the NPV calculations "during" any mediation, but only produced those calculations after the scheduled mediation dates. In any case, the mediator's report in this case includes all three of the statements listed in 12 V.S.A. § 4634(b)(6)(A).

Citibank's arguments to the contrary are unconvincing. To the extent that Citibank asserts that Defendants' later refusal to mediate calls into question whether their motivation is obtaining a proper HAMP outcome or just obtaining sanctions in hopes of reducing their mortgage debt, the court believes that sanctions are appropriate and will put the parties on a path toward the "proper" HAMP outcome. The court agrees with Defendants that it is irrelevant whether HAMP itself creates a cause of action for sanctions. The court also agrees with Defendants that Vermont's Foreclosure Mediation Statutes are not preempted by the federal HAMP program. Citibank cites no case specifically so holding. To the extent Citibank is concerned that Vermont's Foreclosure Mediation Statute requires overly burdensome real-time live interaction with lenders and thus creates an obstacle to the accomplishment of HAMP's purposes, the court disagrees. Requiring mediation is designed to assure the application of HAMP, not to undermine it. *See* 12 V.S.A. § 4631(a). Nor does the court believe that requiring mediation—especially where the mediator may authorize appearance by telephone or

---

[5] Section 4635(b)'s reference to subdivision 4704(b)(6) is plainly intended to be a reference to § 4634(b)(6). *See* Historical and Statutory Notes, 12 V.S.A. § 4634 (noting that § 4634 was added as § 4704, but was redesignated as § 4634 by Legislative Counsel).

videoconference, 12 V.S.A. § 4633(e)—is so burdensome that it obstructs national banks' powers to conduct activities authorized under federal law.

The court concludes that the appropriate sanction in this case is to toll interest, fees and costs on Defendants' account after September 23, 2010, and to order the parties to participate in foreclosure mediation.

Order

Defendants' motion to vacate is denied. Defendants' motion for sanctions is granted. Interest, fees and costs on Defendants' account after September 23, 2010 are tolled, and the parties are ordered to participate in foreclosure mediation within 60 days. A status conference will be scheduled after that date.

Dated at Burlington this 1st day of September 2011.

_____
Helen M. Toor
Superior Court Judge

13