### In re Richard D. Mecier

[460 A.2d 472]

No. 378-81

Present: **Billings, C.J., Hill, Underwood and Peck, JJ., and Larrow, J. (Ret.), Specially Assigned**

Opinion Filed April 5, 1983

*Nancy E. Kaufman,* Montpelier, for Petitioner-Appellant.

*James P. Mongeon,* Rutland County State's Attorney, Rutland, for Respondent-Appellee.

**Billings, C.J.** Following our decision in *State v. Mecier,* 138 Vt. 149, 412 A.2d 291 (1980), upholding defendant's convictions on two counts of aggravated assault in the shooting of his wife and daughter, defendant filed a petition for post-conviction relief. 13 V.S.A. § 7131 et seq. As grounds defendant claimed he was denied his right to effective assistance of counsel guaranteed under the sixth and fourteenth amendments to the United States Constitution, in that his trial attorneys refused to allow him to testify, neglected to call all potential witnesses in his behalf, and failed to cross-examine certain witnesses in the manner urged by defendant. The Orange Superior Court found after hearing that defendant's attorneys "exercised more than the degree of skill and knowledge which then prevailed in the legal community," and on that basis denied defendant's petition.

On appeal, defendant raises three questions for our consideration: (1) whether the superior court applied an erroneous standard of proof regarding defendant's claim that he was denied the right to testify; (2) whether his trial attorneys provided ineffective assistance of counsel by failing to cross-examine defendant's wife regarding her allegations that defendant threatened and physically abused her; and (3) whether his trial attorneys provided ineffective assistance of counsel by failing to challenge those portions of the prosecutor's closing argument which were inflammatory and prejudicial. We will take each of these contentions in turn.

Defendant's first contention is that the superior court applied an erroneous standard of proof in determining his claim that he was denied the right to testify, thus depriving him of a proper consideration of this claim. He argues that the court below should have recognized that the right to testify in one's

own behalf is guaranteed by the United States and Vermont Constitutions, and that such right is so fundamental that it may be waived only by the defendant personally, upon an in-court showing that he has done so knowingly and voluntarily. Instead of determining whether defendant had constitutionally waived his right to testify, he urges, the trial court considered the question as one of counsel effectiveness, determining that defendant's trial attorneys exercised reasonable competence in advising defendant not to take the stand.

At the outset we note that as the moving party in this matter defendant had the burden of establishing the infirmity of his conviction, *In re Kasper*, 142 Vt. 31, 35, 451 A.2d 1125, 1126 (1982) ; *In re Stewart*, 140 Vt. 351, 361, 438 A.2d 1106, 1110 (1981), which burden necessarily included framing the issues to be determined in the post-conviction proceeding. A review of the record and transcript of that proceeding reveals that defendant framed the issue of his failure to testify not as a question of constitutional waiver, but rather as one of constitutional right to effective assistance of counsel.

The memorandum in support of the post-conviction petition presents the issue as follows:

> The petitioner asserts that his conviction should be reversed and his sentence set aside because he was denied his right to effective assistance of counsel, which right is guaranteed to him under the 6th Amendment, as applied to the States through the 14th Amendment, to the United States Constitution.
>
> . . . .
>
> Counsel had the duty to present evidence in the petitioner's favor, object to inadmissible evidence offered by the State, and cross-examine the State's witnesses to determine the truth of their testimony. The petitioner's former attorneys failed in all three of these duties. They failed to put on the stand four witnesses, including the petitioner, who could have given testimony to support the petitioner's claim that he was too intoxicated to form the intent for aggravated assault. They failed to object to immaterial and inflammatory issues testified to by the State's witnesses.

This Court must analyze the facts of the case in the light of *In re Cronin, supra,* to determine that the petitioner's attorneys did not provide the customary skill and knowledge which normally prevail at the time and place of the trial.

The issue was likewise framed as a question of counsel competence in defendant's Request for Findings of Fact and Conclusions of Law, and such framing was evident throughout the post-conviction hearing.

It is the long-standing policy of this Court to forego review of an issue based on a legal theory different from that which was raised below. *In re Estate of Boisvert,* 135 Vt. 69, 71, 370 A.2d 209, 210–11 (1977). "Where it appears from the record that the trial below proceeded upon a certain theory, acquiesced in by court and counsel, the theory thus adopted, whether right or wrong, becomes the law of the case." *Merrill* v. *Reed,* 123 Vt. 248, 252, 185 A.2d 737, 740 (1962) (citing *Senna* v. *Gero,* 118 Vt. 331, 336, 109 A.2d 344, 347 (1954)); *Skoll* v. *Cushman,* 111 Vt. 160, 164, 13 A.2d 180, 181–82 (1940). For this reason, we are precluded from reviewing this claim unless it constitutes glaring error, that is, error of the type "so grave and serious that it 'strikes at the very heart of [defendant's] constitutional rights.'" *State* v. *Towne,* 142 Vt. 241, 245, 453 A.2d 1133, 1134 (1982) (quoting *State* v. *Smith,* 140 Vt. 247, 257, 437 A.2d 1093, 1098 (1981), and *State* v. *Blaine,* 133 Vt. 345, 349, 341 A.2d 16, 19 (1975)); *State* v. *Morrill,* 127 Vt. 506, 511, 253 A.2d 142, 145 (1969).

Defendant urges us to hold that the right to testify is secured by both the federal and Vermont constitutions, that it may only be waived by the defendant personally, upon an in-court finding that he has done so knowingly and voluntarily, see, e.g., *Fay* v. *Noia,* 372 U.S. 391, 439 (1963) (citing *Johnson* v. *Zerbst,* 304 U.S. 458, 464 (1938)), and that the failure of the superior court to inquire into the validity of defendant's waiver below was glaring error. However, on the facts in this case it is unnecessary to cut so wide a cloth, and given our rule against needlessly deciding constitutional issues, *Herald Association, Inc.* v. *Ellison,* 138 Vt. 529, 533, 419 A.2d 323, 326 (1980); *Lague, Inc.* v. *State,* 136 Vt. 413, 416, 392

A.2d 942, 944 (1978); *Eurich* v. *Coffee-Rich, Inc.,* 130 Vt. 537, 544, 298 A.2d 846, 850 (1972), we decline to do so here.

■ Instead we hold that whether the right to testify is constitutional or statutory, see 13 V.S.A. § 6601, where, as here, defendant has acquiesced in the competent advice of his attorney not to take the stand, and has failed to assert his right at or before the trial, he is deemed to have waived it. That is, while the decision to testify is one ultimately for the defendant to make, the right is " 'subject to the limitation that the defendant make his objection known at trial, not as an afterthought.' " *People* v. *Knox,* 58 Ill. App. 3d 761, 767, 374 N.E.2d 957, 962 (1978) (quoting *State* v. *Tillery,* 107 Ariz. 34, 38, 481 P.2d 271, 275, *cert. denied,* 404 U.S. 847 (1971)).

A significant number of other state courts have imposed this "contemporaneous request" standard upon defendants in criminal trials. See, Polster, *The Dilemma of the Perjurious Defendant: Resolution, Not Avoidance,* 28 Case W. Res. L. Rev. 3, 12 (1977). The Illinois Supreme Court considered the hazards of allowing defendants, who on advice of counsel chose not to testify, later to attack their convictions on this basis:

> By hypothesis, in every case in which the issue is raised, the lawyer's advice [not to testify] will in retrospect appear to the defendant to have been bad advice, and he will stand to gain if he can succeed in establishing that he did not testify because his lawyer refused to permit him to do so.

*People* v. *Brown,* 54 Ill. 2d 21, 24, 294 N.E.2d 285, 287 (1973). And the Supreme Court of Arizona noted:

> Were defendant's desires to testify in his own behalf as strong and unrelentless as he now claims they were, he would not have maintained his silence throughout the entire trial. He might very easily have directed his request to the court or made motion to have his attorney removed.

*State* v. *Tillery, supra,* 107 Ariz. at 37, 481 P.2d at 274.

The Supreme Court of Wisconsin justified its adoption of this rule in the following way:

> We do not believe that either this Court, or trial courts, are in a position to determine whether the criminal defendant accepted counsel's advice, or was deprived of the right to testify when the trial record is silent on the question.
>
> . . . .
>
> ... We in no way mean to hinder the defendant's right to testify. If counsel determines that it is not advisable for the defendant to testify and the defendant acquiesces in that decision, then the right will be deemed waived. If on the other hand the defendant at the time of the trial raises his objection in the record before the trial court, he must be given the opportunity to testify. We will not determine when "advice" stops and the refusal to permit a defendant to testify begins in post conviction proceedings based on a silent record.

*State* v. *Albright,* 96 Wis. 2d 122, 134–35, 291 N.W.2d 487, 493, *cert. denied,* 449 U.S. 957 (1980). Accord, *State* v. *Ring,* 131 Ariz. 374, 378, 641 P.2d 862, 866 (1982); *State* v. *Smith,* 299 N.W.2d 504, 506 (Minn. 1980); *Ingle* v. *State,* 92 Nev. 104, 106, 546 P.2d 598, 599 (1976); *People* v. *Guillen,* 37 Cal. App. 3d 976, 984–85, 113 Cal. Rptr. 43, 48 (1974); *Hughes* v. *State,* 513 P.2d 1115, 1119–20 (Alaska 1973); *State* v. *Kremens,* 57 N.J. 309, 312, 272 A.2d 537, 538–39 (1971); cf. *United States* v. *Ives,* 504 F.2d 935, 939 (9th Cir. 1974) ("It is unnecessary for us to delineate further than to hold that if the Fifth Amendment does guarantee a defendant the opportunity to testify, he must claim it by attempting to take the stand or it is waived.").

It is manifestly clear in this case that defendant made no contemporaneous request to be allowed to testify at trial. This is reflected in the superior court's findings, which are supported by the evidence presented at the post-conviction hearing and by the trial transcript. Defendant admitted, and the court so found, that prior to trial defendant had agreed to not testify. The court further found that during trial defendant changed his mind about testifying, and that he discussed the matter with his counsel. His attorney "advised his

client not to testify and would have continued to so advise but indicated that if [defendant] insisted upon testifying [his attorney] would have accepted [defendant's] wish. [Defendant] never insisted but instead agreed not to testify." Defendant directed no request to testify to the court, nor moved to have his attorney removed; nor did he assert denial of this right on appeal or to the superior court. We therefore hold that defendant acquiesced in his counsel's advice, and thereby waived his right to testify; he cannot now argue that his waiver of that right constituted reversible error.

▬ Defendant's second claim of error concerns the failure of his trial counsel to cross-examine defendant's wife regarding her testimony that, on occasions considerably prior to the shootings, defendant had threatened her with violence and had physically abused her. In order to prevail on this claim defendant was required to prove that, in failing to so cross-examine Mrs. Mecier, his trial counsel exercised less than the degree of skill and knowledge which then prevailed in the legal community, *In re Cronin*, 133 Vt. 234, 240, 336 A.2d 164, 168 (1975), and that such ineffectiveness caused fundamental error in defendant's trial. *In re Kasper, supra*, 142 Vt. at 35, 451 A.2d at 1126. This he was required to establish "by a preponderance of the evidence." *Id.; In re Stewart, supra,* 140 Vt. at 361, 438 A.2d at 1110.

▬ As we have noted before, "[c]ross-examination is essentially a tactical decision by trial counsel." *In re Bousley,* 130 Vt. 296, 302, 292 A.2d 249, 253 (1972).

> The right of cross-examination is fundamental, but the failure to exercise that right does not necessarily show ineffective representation. It is well known that cross-examination may hurt more than help. The decision . . . is a matter of trial tactics involving many factors rarely appearing of record. We cannot rule that failure to cross-examine conclusively demonstrates ineffective representation . . . .

*Id.* (quoting *Slaughter* v. *United States,* 89 A.2d 646, 647–48 (Mun. Ct. App. D.C. 1952)). This is even more true in cases such as this, where the defense is that of insanity.

Tactically, such a defense poses many dilemmas of serious proportions to counsel, and almost always calls for judgment determinations on matters fraught with danger for his client. . . . Counsel must be free to make such decisions without threat, and courts must be free to accept them. . . .

Thus, asserted errors raised by other counsel in post-conviction proceedings must be evaluated in the light of the full picture of the defense, and not extracted from context.

*In re Pray,* 133 Vt. 253, 254–55, 336 A.2d 174, 175–76 (1975).

The thrust of the defense at trial was that the assault was not purposeful, but rather was the culmination of a series of personal traumatic events which caused defendant to fall into a severe, psychotic depression and gross intoxication. Mrs. Mecier was a critical witness in this regard, for by recounting defendant's mental decline she provided the basis for defendant's expert psychiatric testimony. In order to undermine her allegations that defendant's behavior was a result of his depression, and in an effort to prove that the shooting was purposeful, the State elicited testimony from Mrs. Mecier that her husband had been abusing her and threatening her ever since she filed for a divorce action in 1976. At the post-conviction hearing defendant maintained that this testimony was false, that he had urged his trial attorneys to confront and impeach his wife by cross-examination, and that their failure to do so evidenced incompetence.

However, the superior court found that Mrs. Mecier was a "crucial" witness for the defense, and that to have impeached her in the manner urged by defendant might well have "diminished her general credibility to the jury, thus weakening the [defendant's] case." The court acknowledged that "[t]his was a trial tactic balancing the factors of the case. Because it was ultimately unsuccessful does not necessarily cause such a tactical choice to amount to inadequate representation."

■    Counsel enjoy wide latitude in decisions regarding trial strategy. *In re Kasper, supra,* 142 Vt. at 37, 451 A.2d at 1127; *State* v. *Smith, supra,* 140 Vt. at 261–62, 437 A.2d at 1100; *In re King,* 133 Vt. 245, 250, 336 A.2d 195, 199 (1975).

This Court is not permitted to judge from hindsight whether tactical decisions are ultimately successful in determining claims of attorney competence; rather, we must look to whether such decisions were within the range of competence demanded of attorneys in a criminal case at that time. *In re Cronin, supra,* 133 Vt. at 239–40, 336 A.2d at 168–69. The superior court found that trial counsels' decision was well within the range of competence; as the evidence supports this finding we are not persuaded to disturb it.

We turn now to defendant's final argument, that he was denied effective assistance of counsel by the failure of his attorneys to object to those portions of the State's closing argument which he claims were inflammatory and prejudicial. Defendant concedes that this issue was raised neither on direct appeal of defendant's conviction nor in the post-conviction proceedings below. Therefore, we are precluded from reviewing this claim unless it constitutes glaring error. *State* v. *Towne, supra,* 142 Vt. at 245, 453 A.2d at 1134, and cases cited therein.

█ We find no such error here. For the most part, those portions of the State's argument which defendant now claims were improper merely reviewed admissible and relevant evidence elicited from Mrs. Mecier regarding defendant's prior threats and physical abuse. "While perhaps damaging to the defendant's cause, the failure to object to admissible and relevant evidence cannot here be used to support a claim of ineffectiveness . . . [for it] is a matter of trial tactics . . . ." *In re King, supra,* 133 Vt. at 250, 336 A.2d at 199. While the remaining comments cited by defendant edged perilously close to those which this Court has in the past condemned, see *State* v. *Moran,* 141 Vt. 10, 19–20, 444 A.2d 879, 884 (1982); *State* v. *Parker,* 104 Vt. 494, 503, 162 A. 696, 699–700 (1932), and while defense counsel might rightfully have objected or requested a limiting instruction, *State* v. *Lapham,* 135 Vt. 393, 407–08, 377 A.2d 249, 257–58 (1977); *State* v. *Oakes,* 129 Vt. 241, 258, 276 A.2d 18, 28–29 (1971), we cannot say that the failure to do so constituted glaring error. Compare *Commonwealth* v. *Valle,* 240 Pa. Super. 411, 362 A.2d 1021 (1976).

*Affirmed.*