2013 VT 85

## In re Matthew Lowry

[84 A.3d 816]

No. 12-371

Present: **Reiber, C.J., Dooley, Skoglund, Burgess and Robinson, JJ.**

Opinion Filed October 4, 2013

*Dawn Matthews*, Prisoners' Rights Office, Montpelier, for Petitioner-Appellant.

*William H. Sorrell*, Attorney General, and *Evan Meenan*, Assistant Attorney General, Montpelier, for Respondent-Appellee.

¶ 1. **Skoglund, J.** Petitioner appeals from the superior court's order granting summary judgment to the State and dismissing his petition for post-conviction relief (PCR). Petitioner asserts that the PCR court disregarded material disputed facts on his claim of ineffective assistance of counsel and prematurely concluded that, as a matter of law, counsel's performance was professionally reasonable and did not prejudice the outcome of petitioner's trial. We reverse and remand.

¶ 2. The record, construed in the light most favorable to the nonmoving party, petitioner, reflects the following. See *In re Carter*, 2004 VT 21, ¶ 6, 176 Vt. 322, 848 A.2d 281. In 2005, petitioner lived with his girlfriend (witness)[1] and their two young children. In July 2005, their infant daughter was hospitalized for symptoms and injuries consistent with head trauma. In May 2006, petitioner was charged with two counts of first-degree aggravated domestic assault for allegedly causing the child's injuries.

¶ 3. Petitioner was assigned counsel; trial was scheduled for February 2007. As a defense strategy, counsel wanted to highlight that other people had access to the child and could have injured her. In particular, counsel contemplated that if witness claimed her Fifth Amendment privilege against self-incrimination when called to testify at trial, the jury might infer that she was involved in the crime and therefore reasonably doubt petitioner's participation. Counsel's affidavit acknowledges that the strategy was his idea, stating that it "came to [him]" during a January 2007 meeting with witness and petitioner. Petitioner's counsel discussed the strategy at the January 2007 meeting with both witness and petitioner.[2] Petitioner's counsel also advised witness to discuss the proposed tactic with her own counsel.

---

[1] Petitioner married his girlfriend after their daughter's hospitalization, and they subsequently divorced. For consistency, we refer to her as "witness."

[2] Although parties agree counsel first suggested this strategy, witness provided varying accounts as to whether the idea originated with petitioner or counsel. Witness first told police that, before she met with petitioner's counsel, petitioner

¶ 4. Witness did consult with an attorney and ultimately decided not to claim her Fifth Amendment privilege at trial. Instead, she testified as a prosecution witness that petitioner had encouraged her to invoke the Fifth Amendment when testifying. Pressed by the prosecution, witness explained that she thought that petitioner had hoped this tactic would make him appear innocent. Petitioner's counsel objected to this testimony based on attorney-client privilege. Then, after his objection was denied, counsel failed to address the matter on cross-examination or in his closing argument.

¶ 5. Referring to witness's testimony as "potentially . . . the most damaging evidence in the case," the State emphasized it in its closing argument. Specifically, the State contended that witness's testimony revealed that petitioner had tried to manipulate the process because he knew he was guilty. The jury found petitioner guilty on one count of aggravated domestic assault, and he was sentenced to imprisonment for five to fifteen years.

¶ 6. Following his conviction, petitioner filed a PCR petition pursuant to 13 V.S.A. § 7131, alleging that his conviction was invalid because his attorney provided ineffective assistance of counsel. Petitioner claimed that counsel performed below an objective standard of reasonableness according to prevailing professional norms and prejudiced his defense by: (1) proposing to witness that she invoke the Fifth Amendment rather than testifying; and (2) failing to cross-examine her or otherwise address at trial her damaging testimony concerning this proposal. The State moved for summary judgment, contending that trial counsel's choice of trial strategy was professionally reasonable and did not influence the outcome of the case. In response, petitioner submitted an affidavit from an experienced criminal defense lawyer who corroborated petitioner's claim, opining that trial counsel's strategy further incriminated petitioner and speculating that counsel's inadequate response to witness's testimony could have been self-

called her and suggested she invoke the Fifth Amendment at trial so that the jury would infer her guilt and his innocence. When she testified at trial, witness made the same claim. By contrast, witness stated in an October 2007 affidavit that petitioner had neither encouraged her to invoke the Fifth Amendment nor explained that doing so would imply that she, not petitioner, was guilty. Witness claimed the State had pressured her during the investigation and had taken her earlier statements out of context. Finally, in a September 2011 affidavit, witness again asserted that petitioner had suggested she invoke the Fifth Amendment to distract the jury and help him avoid a guilty verdict, now claiming petitioner's family had pressured her to sign the 2007 affidavit.

serving. The PCR court granted the State's motion for summary judgment, concluding that: (1) counsel had to abide by petitioner's decision to pursue the strategy, even if doing so was not in petitioner's best interest; (2) counsel's proposed trial strategy was reasonable, as the proposed tactic was never implemented and petitioner did not allege that counsel failed to disclose its risks; (3) counsel's decision not to cross-examine witness was a reasonable tactic, given the risk of harm in doing otherwise; and (4) witness's testimony was too vague and ambiguous to establish the reasonable probability of a different outcome without it. This appeal followed.

¶ 7. We review a grant of summary judgment de novo, using the same standard as the trial court and conducting a "plenary, nondeferential review of questions of law." *Daniels v. Elks Club of Hartford*, 2012 VT 55, ¶ 15, 192 Vt. 114, 58 A.3d 925; *In re Barrows*, 2007 VT 9, ¶ 5, 181 Vt. 283, 917 A.2d 490. "We will affirm a summary judgment decision when no genuine issues of material fact exist and the prevailing party is entitled to judgment as a matter of law." *Daniels*, 2012 VT 55, ¶ 15; see also V.R.C.P. 56(a). On appeal, petitioner argues that the PCR court erred in granting summary judgment to the State because material facts concerning the proposed strategy remain in dispute. Specifically, petitioner contends that he presented a genuine dispute as to whether and to what extent counsel anticipated risks and adequately advised petitioner before proposing the contested strategy. He also argues there is no support in the record for the court's rationale that counsel "must abide by certain of a defendant's decisions, even if doing so is not in the defendant's best interest," citing to *State v. Yoh*, 2006 VT 49A, ¶ 31, 180 Vt. 317, 910 A.2d 853. Petitioner asserts that counsel's strategy, although unexecuted by witness, led inexorably to witness's damaging trial testimony.

¶ 8. The issue for this Court is whether a dispute of material fact exists and whether the facts, when viewed in the light most favorable to petitioner, demonstrate that counsel's conduct was reasonable and any errors did not prejudice the outcome at trial. Ineffective assistance of counsel exists if: (1) counsel's performance "fell below an objective standard of reasonableness," informed by the "prevailing professional norms" for competency; and (2) there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *In re Combs*, 2011 VT 75, ¶ 9, 190 Vt. 559, 27 A.3d 318

(quotations omitted). Although this Court recognizes a strong presumption that counsel performed with reasonable competence, *In re Pernicka*, 147 Vt. 180, 183, 513 A.2d 616, 618 (1986), we cannot conclude as a matter of law on the basis of the undisputed facts in this record that counsel's performance fell within the broad bounds of professional reasonableness or that any errors did not prejudice the proceeding. The parties appear to agree that the contested strategy originated with counsel, but significant factual disputes remain over whether counsel anticipated the consequences of proposing that witness invoke the Fifth Amendment at trial or whether counsel apprised petitioner of any risks that could result from the strategy. The resolution of these disputes bears critically on whether counsel's performance was objectively reasonable.

¶ 9. ■ The PCR court, citing to *State v. Yoh*, correctly stated that a defense attorney must permit the defendant to make certain strategic decisions even if such decisions are not in the defendant's best interest. 2006 VT 49A, ¶ 31; see also *In re Trombly*, 160 Vt. 215, 218, 627 A.2d 855, 857 (1993) ("[M]any trial tactics are ultimately defense counsel's call, but [others] generally are within the defendant's decisional control."). A defendant should only make tactical decisions, however, after he or she has fully consulted with counsel. See, e.g., *Trombly*, 160 Vt. at 219, 627 A.2d at 857 (listing decisions to be made by the accused after full consultation with defense counsel). Here, the affidavit of trial counsel affirmatively states that the idea was one he proposed for the first time, without prior consultation with petitioner, at the client meeting attended by witness. Furthermore, the undisputed facts do not indicate that it was petitioner's decision to move forward with this strategy. The court's unsupported inference that petitioner directed the strategy was in error.

¶ 10. "[C]ourts are not empowered to try issues of fact on a [summary judgment] motion. They examine the affidavits or other evidence simply to determine whether a triable issue exists rather than for the purpose of resolving the issue." *Berlin Dev. Assocs. v. Dep't of Soc. Welfare*, 142 Vt. 107, 111, 453 A.2d 397, 399 (1982) (quotation omitted). Furthermore, the "function of a summary judgment is to avoid a useless trial, but a trial is not only not useless but absolutely necessary where there is a genuine issue as to any material fact." *Sykas v. Kearns*, 135 Vt. 610, 612, 383 A.2d 621, 623 (1978) (citations omitted). Petitioner's argument is that

whether or not he had a conversation with witness encouraging her to invoke the Fifth Amendment, the idea came from counsel, and, as petitioner's advocate, counsel should have acknowledged the potentially dire consequences of advancing it. Where the PCR court relied on its own characterization of events — that petitioner persisted in this strategy over any concerns that counsel may have raised — the facts surrounding counsel's anticipation and disclosure to petitioner of the risks associated with the strategy are neither clear nor undisputed, and as such "need to be tested in open court by the trier of fact." *Pierce v. Riggs*, 149 Vt. 136, 140, 540 A.2d 655, 658 (1987).

¶ 11. That petitioner failed to specifically allege on the record before the trial court that he was not properly informed of the risks of pursuing this strategy does not affect our holding. The State's summary judgment motion made no argument based on an assertion that counsel had satisfied his obligation to inform petitioner of the potential serious risks inherent in the strategy. Even the trial court noted the "seriousness" of the proposed strategy when it opined that a defense attorney must abide by a defendant's decisions "even where a trial strategy is 'doomed to fail.' " *Yoh*, 2006 VT 49A, ¶¶ 31-32. As petitioner's expert witness noted, "while there was some discrepancy as to who initially raised the issue with [witness], there seemed to be an agreement that the idea started with [counsel]. Outside of a television script, this strategy was doomed to failure." The issue was before the court, notwithstanding petitioner's failure to specifically articulate it in his pleading.

¶ 12. That the strategy as proposed was never implemented by defense at trial is irrelevant under the circumstances, since witness's arguably damaging trial testimony stemmed directly from the proposal itself. See *In re Mecier*, 143 Vt. 23, 31, 460 A.2d 472, 477 (1983) ("[A]sserted errors raised by other counsel in post-conviction proceedings must be evaluated in the light of the full picture of the defense, and not extracted from context.") (quotation omitted).

¶ 13. Finally, the PCR court's decision on summary judgment that no prejudice could have resulted from proposing the contested strategy is not persuasive. The court dismissed the witness's trial testimony, finding it "simply too ambiguous and lacking in detail to establish that effective counsel would have produced a

different outcome." In its conclusion, the court did not mention or consider the State's closing argument at trial that witness's testimony was "potentially the most damaging evidence in the case." Nor did it take account of the opinion of petitioner's expert that witness's testimony "was the most damaging testimony and evidence in the trial," and that "it was particularly harmful in that it clearly supported a finding of consciousness of guilt and it refuted the defense strategy of implicating another caretaker of [the injured child]." Petitioner's expert noted that, without the evidence from witness concerning the purported trial strategy, "the jurors would have been left to speculate about circumstantial evidence of opportunity and conflicting accounts from one youthful witness [petitioner's son]." See *Yoh*, 2006 VT 49A, ¶ 33 (finding that a ruling of no prejudice "would have strained belief" where the record contained sufficient evidence to support a less risky defense strategy and "there is no telling how a jury would have weighed that evidence if it was presented in place of the [argument advanced by counsel]").

¶ 14. ■ The conflicting record is inadequate to determine on summary judgment whether counsel reasonably anticipated the consequences of suggesting the risky defense strategy, including sufficiently informing petitioner about its risks; and, if he did not, whether petitioner's defense was prejudiced thereby. We therefore reverse the PCR court's granting of summary judgment to the State on petitioner's ineffective assistance of counsel claim and remand for an evidentiary hearing.

*Reversed and remanded for further proceedings consistent with the views expressed in this opinion.*