2013 VT 85



In re Lowry (2012-371)

 

2013 VT 85

 

[Filed 04-Oct-2013]

 

NOTICE:  This opinion is
subject to motions for reargument under V.R.A.P. 40 as well as formal revision
before publication in the Vermont Reports.  Readers are requested to
notify the Reporter of Decisions by email at: JUD.Reporter@state.vt.us or by
mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont
05609-0801, of any errors in order that corrections may be made before this
opinion goes to press.

 

 


 2013 VT 85
 
  


 No. 2012-371
 
  


 In re Matthew Lowry
 
 
 Supreme Court
 
 
  
 
 
  
 
 
  
 
 
 On Appeal from
 
 
  
 
 
 Superior Court, Addison Unit,
 
 
  
 
 
 Civil Division
 
 
  
 
 
  
 
 
  
 
 
 May Term, 2013
 
 
  
 
 
  
 
 
  
 
 
  
 
 
 A.
 Gregory Rainville, J.
 
 
  
 
 Dawn Matthews, Prisoners’ Rights Office, Montpelier, for
Petitioner-Appellant.

 

William H. Sorrell, Attorney General, and Evan Meenan, Assistant Attorney General,

  Montpelier, for
Respondent-Appellee.

 

 

PRESENT:  Reiber, C.J.,
Dooley, Skoglund, Burgess and Robinson, JJ.

 

 

¶ 1.            
SKOGLUND, J.   Petitioner appeals from the superior
court’s order granting summary judgment to the State and dismissing his
petition for post-conviction relief (PCR).  Petitioner asserts that the
PCR court disregarded material disputed facts on his claim of ineffective
assistance of counsel and prematurely concluded that, as a matter of law,
counsel’s performance was professionally reasonable and did not prejudice the
outcome of petitioner’s trial.  We reverse and remand.

¶ 2.            
The record, construed in the light most favorable to the nonmoving
party, petitioner, reflects the following.  See In re Carter, 2004
VT 21, ¶ 6, 176 Vt. 322, 848 A.2d 281.  In
2005, petitioner lived with his girlfriend (witness)[1] and
their two young children.  In July 2005, their infant daughter was
hospitalized for symptoms and injuries consistent with head trauma.  In
May 2006, petitioner was charged with two counts of first-degree aggravated
domestic assault for allegedly causing the child’s injuries. 


¶ 3.            
Petitioner was assigned counsel; trial was scheduled for February
2007.  As a defense strategy, counsel wanted to highlight that other
people had access to the child and could have injured her.  In particular,
counsel contemplated that if witness claimed her Fifth Amendment privilege
against self-incrimination when called to testify at trial, the jury might
infer that she was involved in the crime and therefore reasonably doubt petitioner’s
participation.  Counsel’s affidavit acknowledges that the strategy was his
idea, stating that it “came to [him]” during a January 2007 meeting with
witness and petitioner.  Petitioner’s counsel discussed the strategy at
the January 2007 meeting with both witness and petitioner.[2]  Petitioner’s counsel also advised
witness to discuss the proposed tactic with her own counsel.  

¶
4.            
Witness did consult with an attorney and ultimately decided not to claim
her Fifth Amendment privilege at trial.  Instead, she testified as a
prosecution witness that petitioner had encouraged her to invoke the Fifth
Amendment when testifying.  Pressed by the prosecution, witness explained
that she thought that petitioner had hoped this tactic would make him appear
innocent.  Petitioner’s counsel objected to this testimony based on
attorney-client privilege.  Then, after his objection was denied, counsel
failed to address the matter on cross-examination or in his closing argument. 


¶ 5.            
Referring to witness’s testimony as “potentially . . . the
most damaging evidence in the case,” the State emphasized it in its closing
argument.  Specifically, the State contended that witness’s testimony
revealed that petitioner had tried to manipulate the process because he knew he
was guilty.  The jury found petitioner guilty on one count of
aggravated domestic assault, and he was sentenced to imprisonment for five to
fifteen years.  

¶ 6.            
Following his conviction, petitioner filed a PCR petition pursuant to 13
V.S.A. § 7131, alleging that his conviction was invalid because his
attorney provided ineffective assistance of counsel.  Petitioner claimed
that counsel performed below an objective standard of reasonableness according
to prevailing professional norms and prejudiced his defense by: (1) proposing
to witness that she invoke the Fifth Amendment rather than testifying; and (2)
failing to cross-examine her or otherwise address at trial her damaging
testimony concerning this proposal.  The State moved for summary judgment,
contending that trial counsel’s choice of trial strategy was professionally
reasonable and did not influence the outcome of the case.  In response,
petitioner submitted an affidavit from an experienced criminal defense lawyer
who corroborated petitioner’s claim, opining that trial counsel’s strategy
further incriminated petitioner and speculating that counsel’s inadequate
response to witness’s testimony could have been self-serving.  The PCR
court granted the State’s motion for summary judgment, concluding that: (1)
counsel had to abide by petitioner’s decision to pursue the strategy, even if
doing so was not in petitioner’s best interest; (2) counsel’s proposed trial
strategy was reasonable, as the proposed tactic was never implemented and
petitioner did not allege that counsel failed to disclose its risks; (3) counsel’s decision not to cross-examine witness was a
reasonable tactic, given the risk of harm in doing otherwise; and (4) witness’s
testimony was too vague and ambiguous to establish the reasonable probability
of a different outcome without it.  This appeal followed. 

¶ 7.            
We review a grant of summary judgment de novo, using the same standard
as the trial court and conducting a “plenary, nondeferential
review of the questions of law.”  Daniels v. Elks Club of Hartford,
2012 VT 55, ¶ 15, 194 Vt. 114, 58 A.3d 925; In re Barrows, 2007 VT
9, ¶ 5, 181 Vt. 283, 917 A.2d 490.  “We will affirm a summary
judgment decision when no genuine issues of material fact exist and the
prevailing party is entitled to judgment as a matter of law.”  Daniels,
2012 VT 55, ¶ 15; see also V.R.C.P. 56(a).  On appeal, petitioner
argues that the PCR court erred in granting summary judgment to the State
because material facts concerning the proposed strategy remain in
dispute.  Specifically, petitioner contends that he presented a genuine
dispute as to whether and to what extent counsel anticipated
risks and adequately advised petitioner before proposing the contested
strategy.  He also argues there is no support in the record for the
court’s rationale that counsel “must abide by certain of a defendant’s
decisions, even if doing so is not in the defendant’s best interest,” citing to
State v. Yoh, 2006 VT 49A, ¶ 31, 180 Vt.
317, 910 A.2d 853.  Petitioner asserts that counsel’s strategy, although
unexecuted by witness, led inexorably to witness’s damaging trial
testimony.  

¶ 8.            
The issue for this Court is whether a dispute of material fact exists
and whether the facts, when viewed in the light most favorable to petitioner,
demonstrate that counsel’s conduct was reasonable and any errors did not
prejudice the outcome at trial.  Ineffective assistance of counsel exists
if: (1) counsel’s performance “fell below an objective standard of
reasonableness,” informed by the “prevailing professional norms” for
competency; and (2) there exists “a reasonable probability that, but for
counsel’s unprofessional errors, the result of the proceeding would have been
different.”  In re Combs, 2011 VT 75, ¶ 9,
190 Vt. 559, 27 A.3d 318.  Although this Court recognizes a strong
presumption that counsel performed with reasonable competence, In re Pernicka, 147 Vt. 180, 183, 513 A.2d 616, 618 (1986),
we cannot conclude as a matter of law on the basis of the undisputed facts in
this record that counsel’s performance fell within the broad bounds of
professional reasonableness or that any errors did not prejudice the
proceeding.  The parties appear to agree that the contested strategy
originated with counsel, but significant factual disputes remain over whether
counsel anticipated the consequences of proposing that witness invoke the Fifth
Amendment at trial or whether counsel apprised petitioner of any risks that
could result from the strategy.  The resolution of these disputes bears
critically on whether counsel’s performance was objectively reasonable.  

¶ 9.            
The PCR court, citing to State v. Yoh,
correctly stated that a defense attorney must permit the defendant to make
certain strategic decisions even if such decisions are not in the defendant’s
best interest.  2006 VT 49A, ¶ 31; see also In re Trombly, 160 Vt. 215, 218, 627 A.2d 855, 857 (1993)
(“[M]any trial tactics are ultimately defense counsel’s call, but [others]
generally are within the defendant’s decisional control.”).  A defendant
should only make tactical decisions, however, after he or she has fully
consulted with counsel.  See, e.g., Trombly,
160 Vt. at 219, 627 A.2d at 857 (listing decisions to be made by the accused
after full consultation with defense counsel).  Here, the affidavit
of trial counsel affirmatively states that the idea was one he proposed for the
first time, without prior consultation with petitioner, at the client meeting
attended by witness.  Furthermore, the undisputed facts do not indicate
that it was petitioner’s decision to move forward with this strategy.  The
court’s unsupported inference that petitioner directed the strategy was in
error.

¶ 10.         “[C]ourts are not empowered to try issues of fact on a [summary
judgment] motion.  They examine the affidavits or other evidence simply to
determine whether a triable issue exists rather than
for the purpose of resolving the issue.”  Berlin Dev.
Assocs. v. Dep’t of Soc. Welfare, 142 Vt. 107, 111, 453 A.2d 397, 399
(1982) (quotation omitted).  Furthermore, the “function of a
summary judgment is to avoid a useless trial, but a trial is not only not
useless but absolutely necessary where there is a genuine issue as to any
material fact.”  Sykas v. Kearns, 135 Vt. 610, 612, 383 A.2d 621, 623 (1978)
(citations omitted).  Petitioner’s argument is that whether or not
he had a conversation with witness encouraging her to invoke the Fifth
Amendment, the idea came from counsel, and, as petitioner’s advocate, counsel
should have acknowledged the potentially dire consequences of advancing
it.  Where the PCR court relied on its own characterization of events—that
petitioner persisted in this strategy over any concerns that counsel may have
raised—the facts surrounding counsel’s anticipation and disclosure to
petitioner of the risks associated with the strategy are neither clear nor
undisputed, and as such “need to be tested in open court by the trier of
fact.”  Pierce v. Riggs, 149 Vt. 136, 140, 540
A.2d 655, 658 (1987).

¶ 11.         That
petitioner failed to specifically allege on the record before the trial court
that he was not properly informed of the risks of pursuing this strategy does
not affect our holding.  The State’s summary judgment motion made no
argument based on an assertion that counsel had satisfied his obligation to
inform petitioner of the potential serious risks inherent in the
strategy.  Even the trial court noted the “seriousness” of the proposed
strategy when it opined that a defense attorney must abide by a defendant’s
decisions “even where a trial strategy is ‘doomed to fail.’ ”  Yoh, 2006 VT 49A,
¶¶ 31-32.  As petitioner’s expert witness noted, “while
there was some discrepancy as to who initially raised the issue with [witness],
there seemed to be an agreement that the idea started with [counsel]. 
Outside of a television script, this strategy was doomed to failure.”  The
issue was before the court, notwithstanding respondent’s failure to specifically
articulate it in his pleading.  

¶ 12.         That
the strategy as proposed was never implemented by defense at trial is
irrelevant under the circumstances, since witness’s arguably damaging trial
testimony stemmed directly from the proposal itself.  See In re Mercier,
143 Vt. 23, 31, 460 A.2d 472, 477 (1983) (“[A]sserted
errors raised by other counsel in post-conviction proceedings must be evaluated
in the light of the full picture of the defense, and not extracted from
context.”).  

¶ 13.         Finally,
the PCR court’s decision on summary judgment that no prejudice could have
resulted from proposing the contested strategy is not persuasive.  The
court dismissed the witness’s trial testimony, finding it “simply too ambiguous
and lacking in detail to establish that effective counsel would have produced a
different outcome.”  In its conclusion, the court did not mention or
consider the State’s closing argument at trial that witness’s testimony was
“potentially the most damaging evidence in the case.”  Nor did it
take account of the opinion of petitioner’s expert that witness’s testimony
“was the most damaging testimony and evidence in the trial,” and that “it was
particularly harmful in that it clearly supported a finding of consciousness of
guilt and it refuted the defense strategy of implicating another caretaker of
[the injured child].”  Petitioner’s expert noted that, without the
evidence from witness concerning the purported trial strategy, “the jurors
would have been left to speculate about circumstantial evidence of opportunity
and conflicting accounts from one youthful witness [petitioner’s son].” 
See Yoh, 2006 VT 49A, ¶ 33 (finding that
a ruling of no prejudice “would have strained belief” where the record
contained sufficient evidence to support a less risky defense strategy and
“there is no telling how a jury would have weighed that evidence if it was
presented in place of the [argument advanced by counsel]”).

¶ 14.         The
conflicting record is inadequate to determine on summary judgment whether
counsel reasonably anticipated the consequences of suggesting the risky defense
strategy, including sufficiently informing petitioner about its risks; and, if
he did not, whether petitioner’s defense was prejudiced thereby.  We
therefore reverse the PCR court’s granting of summary judgment to the State on
petitioner’s ineffective assistance of counsel claim and remand for an
evidentiary hearing.  

Reversed and remanded for
further proceedings consistent with the views expressed in this opinion.

 

 


  
 
 
  
 
 
 FOR THE COURT:
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
 Associate
 Justice
 
  

 











[1] 
Petitioner married his girlfriend after their daughter’s hospitalization, and
they subsequently divorced.  For consistency, we refer to her as
“witness.” 

 





[2] 
Although parties agree counsel first suggested this strategy, witness provided
varying accounts as to whether the idea originated with petitioner or
counsel.  Witness first told police that, before she met with petitioner’s
counsel, petitioner called her and suggested she invoke the Fifth Amendment at
trial so that the jury would infer her guilt and his innocence.  When she
testified at trial, witness made the same claim.  By contrast, witness
stated in an October 2007 affidavit that petitioner had neither encouraged her
to invoke the Fifth Amendment nor explained that doing so would imply that she,
not petitioner, was guilty.  Witness claimed the State had pressured her
during the investigation and had taken her earlier statements out of
context.  Finally, in a September 2011 affidavit, witness again asserted
that petitioner had suggested she invoke the Fifth Amendment to distract the
jury and help him avoid a guilty verdict, now claiming petitioner’s family had
pressured her to sign the 2007 affidavit.