2014 VT 117

# Paul H. Choiniere and P&D Consulting, Inc. v. Anthony P. Marshall and Harris Beach, PLLC

[112 A.3d 723]

No. 13-142

Present: **Reiber, C.J., Dooley, Skoglund and Crawford, JJ.,[1] and Pineles, Supr. J. (Ret.), Specially Assigned**

Opinion Filed November 7, 2014

Motion for Reargument Denied December 23, 2014

---

[1] Justice Crawford was present for oral argument, but did not participate in this decision.

*Michael F. Hanley* of *Plante & Hanley, P.C.*, White River Junction, for Plaintiffs-Appellants.

*Allan R. Keyes* and *Thomas S. Valente* of *Ryan Smith & Carbine, Ltd.*, Rutland, for Defendants-Appellees.

¶ 1. **Skoglund, J.** Plaintiffs Paul Choiniere and P&D Consulting, Inc. sued defendants, attorney Anthony Marshall and his law firm, Harris Beach, PLLC, alleging that they made negligent and intentional misrepresentations while representing a client in a matter involving commercial loan guaranties. Choiniere alleges that he relied upon the misrepresentations when deciding not to call a $1 million loan that he made in September 2003, and P&D Consulting alleges that it relied upon the misrepresentations when deciding to loan an additional $1.3 million in June 2004. We reverse the trial court's decision granting defendants summary judgment.

¶ 2. The events underlying this case began in September 2003 when Choiniere loaned $1 million to Andrew Button to help him purchase an automotive dealership and move it to another location. Button's father and stepmother Christine Rowe-Button personally guaranteed the loan. After receiving that loan, Button began negotiating with Choiniere for an additional loan of $1.3 million to acquire two more automobile dealerships. When Button's father died in January 2004, Rowe-Button hired defendant Marshall to assist in settling her late husband's estate and to try and obtain a release of any and all personal guaranties made to Choiniere.

¶ 3. On April 8, 2004, after several months of fruitless negotiations between Marshall and Button's attorneys, Marshall arranged for Rowe-Button to send each of the creditors, including Choiniere, a letter captioned "Termination of Guaranty." In the letter she stated that her signature on the guaranty "may not reflect my actual signature thereon," intimating that it may have been forged. Then in bold lettering she wrote:

> PLEASE TAKE NOTICE THAT EFFECTIVE AS OF THE DATE OF THIS LETTER, THE ESTATE AND I HEREBY TERMINATE ALL AND ANY GUARANTIES EXECUTED OR PROVIDED OR PURPORTEDLY EXECUTED AND PROVIDED, TO YOU OR YOUR ASSIGNS WITH RESPECT TO ALL AND ANY INDEBTEDNESS OWING TO YOU BY BUTTON HOLDINGS REAL ESTATE, LLC OR ANY AFFILIATE OR OTHER ENTITY, WHETHER EXISTING AT THE TIME OF THE EXECUTION OF THE GUARANTY OR THEREAFTER ARISING.

¶ 4. Six days later, on April 14, 2004, Marshall sent a letter to Choiniere with a reference captioned "Termination of Bank Guaranty," in which he acknowledged that Rowe-Button may have some irrevocable obligations pursuant to the terms of the guaranty agreement,[2] but indicated that the letter was to serve as notice that any guaranty would not extend to any new advances or new indebtedness created after receipt of the letter. The attorney representing Choiniere, Douglas Riley, advised him to call the 2003 loan and not to make any additional loans to Button unless the April 8 and April 14 letters were retracted and new assurances were made. Counsel for Button at the time, Mark Sperry, wrote to Rowe-Button and Marshall on April 27 demanding that Rowe-Button, both individually and as executrix of her late husband's estate, immediately sign letters revoking the earlier letters respecting termination of any guaranties and assuring that any such guaranties remained in force in accordance with their terms.

---

[2] The court ruled that a guaranty "cannot be 'terminated' as to the debt that has already been extended in reliance upon the guaranty, however, because a guaranty is irrevocable as to existing debt." As such, the court held that "the April 8th letter was entirely ineffective to the extent that it purported to 'terminate' the existing [$1 million] debt." This ruling is not contested on appeal.

¶ 5. Marshall responded on behalf of Rowe-Button with the letter that is the focus of this appeal. On April 28, 2004, he sent a letter to one of Choiniere's attorneys acknowledging that Rowe-Button had sent a letter twenty days earlier advising that any guaranties were terminated, but stating: "We have been authorized by our clients to deliver this letter to you." The letter further stated, in bold capital letters, "BE ADVISED THAT THE TERMINATION NOTICE IS HEREBY REVOKED AND RE-SCINDED. If you have any questions, please do not hesitate to contact me." On June 11, 2004, Choiniere, through his company P&D Consulting, loaned an additional $1.3 million to Button.

¶ 6. The matter in dispute is what was meant by the "rescis-sion" letter of April 28 and whether Rowe-Button had authorized Marshall to send the letter. Choiniere claims that the rescission letter misrepresented the facts about whether Rowe-Button in-tended to guarantee the loans, and that he and his company relied on the letter in their business decisions.

¶ 7. Legal action began with a complaint filed by Button in January 2005 seeking a declaration that his stepmother's signa-ture on the guaranty was valid. In 2006, he filed for bankruptcy and was dismissed from the instant proceeding. Before he was dismissed, however, Choiniere intervened and added a claim against Rowe-Button for the guaranteed balance owed on the $1 million loan.

¶ 8. Cross-motions for summary judgment in 2008 largely involved the question of whether the April 28 "rescission" letter estopped Rowe-Button from reneging on any guaranties. Choiniere relied on theories of ratification, equitable estoppel, and waiver in arguing that Rowe-Button should remain liable. He claimed that her rescission letter misled him into believing that any guaranties would be honored, and that he relied upon the letter when making his business decisions, including his decision to loan Button an additional $1.3 million through his company P&D Consulting. Rowe-Button opposed Choiniere's motion and cross-moved for summary judgment on the theories advanced by Choiniere. She claimed that she had not authorized Marshall or his law firm to send the rescission letter on her behalf.

¶ 9. In a December 21, 2008 decision, the court denied both summary judgment motions in all respects, except for Rowe-Button's motion with regard to Choiniere's waiver claim. The court concluded that there were material facts in dispute as to

whether Rowe-Button ratified the rescission letter and whether she was equitably estopped from claiming that she had not authorized the letter. The court also rejected Rowe-Button's motion to dismiss Choiniere's breach-of-contract claim, ruling, among other things, that there was an issue of fact for trial as to damages. At this stage of the case, the court found as follows: "Mr. Choiniere received the April 28th letter and interpreted it as an affirmance of [ ] Rowe-Button's obligations under the personal guaranty. He considered this when evaluating [Button's] credit risk, and relied on the affirmance when he and his wife loaned an additional $1.3 million dollars to another business entity managed by Andrew Button (Button Automotive Group, Inc.) on June 11, 2004."

¶ 10. In January 2009, in response to the court's summary judgment ruling, Choiniere added defendants Marshall and Harris Beach to the case. In his fourth amended complaint, which the court allowed, Choiniere claimed that Marshall and Harris Beach were liable to him for fraud in the inducement and negligent misrepresentation in connection with the April 28 rescission letter.[3] He also amended his complaint to specifically include the claim that P&D Consulting had relied upon the rescission letter when deciding to lend the $1.3 million to Button [hereinafter the P&D loan]. Plaintiffs then settled the case against Rowe-Button, leaving only Marshall and Harris Beach as defendants.

¶ 11. Marshall and Harris Beach then moved for summary judgment based on four independent rationales: (1) the letter of April 28, 2004 was not false in any material sense; (2) the letter was not intended to induce lenders to lend $1.3 million to Button Automotive Group, Inc. [hereinafter the P&D note]; (3) the lenders did not justifiably rely on the letter as meaning that Rowe-Button had relinquished her claim of forgery; and (4) there was no evidence that shows what Choiniere would have collected on the $1 million note or any guaranty at the time the letter was sent.

¶ 12. In its March 19, 2013 decision on defendants' motion for summary judgment, which is the subject of this appeal, the trial court first rejected defendants' argument that the court lacked personal jurisdiction over them. The court ruled that defendants

---

[3] They also alleged a claim of equitable estoppel that was dismissed by the court on a motion pursuant to Vermont Rule of Civil Procedure 12(b)(6).

waived the defense by not asserting it in their answer to the fourth amended complaint and, in any event, did not timely assert it.

¶ 13. On the merits of the motion, the trial court granted summary judgment to defendants on three alternative, independent grounds. First, the court ruled that the April 28 letter did not contain any false promises because it was nonresponsive to the specific demands made by Sperry as counsel for Button in his April 27 letter and therefore could not be construed as an acceptance of those demands. The court acknowledged that the April 28 letter agreed to rescind the April 8 letter, but stated, among other things, that the April 28 letter did not retract the April 14 letter, did not make any promises of any kind, did not say that any guaranties were still in place, did not state that Rowe-Button still guaranteed the September 2003 loan, and did not indicate that Rowe-Button no longer claimed her signature was forged. The court held that plaintiffs failed to produce sufficient evidence to persuade a reasonable jury that the letter contained the alleged false promise, thus finding that plaintiffs did not show sufficient evidence to prevail at trial on each element of their claim of misrepresentation.

¶ 14. Second, the court found that plaintiffs failed to show that any reliance on the April 28 letter was justifiable, noting that Choiniere's own attorney advised him not to make any more loans without retractions and new assurances, and that Choiniere testified at his deposition that he relied on the legal advice of his attorneys. Further, the court noted that the April 28 letter expressly invited plaintiffs to contact Marshall if they had any questions about the letter. The court pointed out that neither Choiniere nor his attorney did so.

¶ 15. As a third independent basis for summary judgment on the claim based on Choiniere not calling the September 2003 note, the court held that the evidence of damages deriving therefrom was merely speculative. Thus, it granted defendants' motion for summary judgment on the merits and on damages.

¶ 16. On appeal, plaintiffs identify the principal issue as whether Marshall and his firm, either fraudulently or negligently, stated that Rowe-Button withdrew her claim that her signature on the guaranty was a forgery, causing Choiniere not to call the $1 million note and inducing P&D Consulting to make an additional $1.3 million loan. They argue that there are material disputes of

fact as to whether: (1) Rowe-Button authorized Marshall to rescind her previous attempt to terminate her personal guaranty; (2) Marshall said that Rowe-Button had withdrawn her assertion that she was not liable for future advances on the note, but preserved her claim that her purported signature on the guaranty was forged; (3) Marshall wrote the rescission letter with an intent to deceive plaintiffs; whether the rescission letter was designed either to induce plaintiffs not to call the $1 million note guaranteed by Rowe-Button or to induce an additional loan or both; and (4) the parties dispute the meaning of the phrase "termination of guaranty." Plaintiffs also contend that a reasonable jury could find that Marshall caused them some economic loss.

¶ 17. For their part, defendants argue that there are no material facts in dispute precluding summary judgment. They also argue that plaintiffs failed to address the trial court's conclusion that there was no evidence of justifiable reliance, as an independent ground for granting summary judgment. Finally, they argue that P&D Consulting's claim is barred by the applicable statute of limitations.

¶ 18. The standard for reviewing a motion for summary judgment under Vermont Rule of Civil Procedure 56 is well-established. We apply the same standard as the trial court, affording its decision no deference. *In re Lowry*, 2013 VT 85, ¶ 7, 195 Vt. 14, 84 A.3d 816. Summary judgment is appropriate when "the record clearly shows that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." *Glassford v. BrickKicker*, 2011 VT 118, ¶ 12, 191 Vt. 1, 35 A.3d 1044 (quotation omitted); see V.R.C.P. 56(a). The purpose of a summary judgment hearing is solely to determine whether a genuine issue of material fact exists, not to adjudicate disputed issues "no matter how unlikely it seems that the party opposing the motion will prevail at trial." *Fonda v. Fay*, 131 Vt. 421, 422, 306 A.2d 97, 98 (1973).

¶ 19. Further, on appeal of a summary judgment motion, we afford the nonmoving party "the benefit of all reasonable doubts and inferences." *Doe v. Forrest*, 2004 VT 37, ¶ 9, 176 Vt. 476, 853 A.2d 48. The burden of persuasion is on the movants, attorney Marshall and Harris Beach; Choiniere and P&D Consulting need only respond "with specific facts raising a triable issue" and "demonstrate sufficient evidence to support a prima facie case." *Dulude v. Fletcher Allen Health Care, Inc.*, 174 Vt. 74, 79, 807 A.2d 390, 395 (2002).

¶ 20. We decline to follow the rationale employed by the trial court in granting defendants' motion for summary judgment, including its reasoning for concluding that the April 28 letter neither made any promises nor explicitly stated that Rowe-Button's guaranty was still in place. Allegedly, Choiniere's lawyer at the time, Riley, told Choiniere not to make any additional loans to Button unless both the April 8 and April 14 letters were retracted and new assurances were made. Riley then asked Button's attorney, Sperry, to obtain "a retraction or other firm, written assurances from Christine Rowe-Button that the Guaranties were still in place, that they still guaranteed the September 2003 loan (in whatever amount is currently still due) and that she no longer claimed that her signature was forged." The letter sent by Sperry to Marshall on April 27 contained the following demand: "we need immediate letters signed by the Estate and Christine to each of these creditors revoking those letters and stating that the guarantees remain in force in accordance with their terms." Marshall responded with the April 28 letter detailed above. The trial court found that the letter was nonresponsive to almost all of the demands that were made on Marshall in Sperry's letter and was therefore a rejection, rather than an acceptance, of the proposed terms.

¶ 21. ▇ We reject this contractual analysis. In stating that the termination notice was revoked and rescinded, the April 28 letter referred to the April 8 letter, irrespective of any demands made in the April 27 letter. The trial court characterized the April 28 letter from Marshall as a rejection of the "proposed terms" demanded by Sperry's letter, but Sperry's April 27 letter was never intended to be an invitation to contract. If anything, the letter was meant to clarify that the original guaranty agreement remained in force in accordance with its terms.[4] The question for the court on summary judgment was how the letter affected the guaranty, not whether the letter met the requirements of a contract. The trial court went astray by reformulating the ques-

---

[4] A "guarantor" typically contracts to fulfill an obligation upon the default of the principal obligor. Restatement (Third) of Suretyship and Guaranty § 1 cmt. b (1996). The Restatement makes clear that the undertaking of the guarantor or secondary obligor will be a contractual obligation. *Id.* § 2 cmt. a ("Regardless of its form . . . the secondary obligation is created by contract or becomes a secondary obligation by contract."). Here, as noted above, there was an executed contract establishing the guaranty agreement.

tion as whether plaintiffs had adduced sufficient evidence to persuade a reasonable jury that the letter contained the alleged false promise. The April 28 letter either rescinded and revoked any guaranty of future indebtedness while preserving the claim that Rowe-Button's purported signature on the guaranty was a forgery, or it rescinded everything stated in the Termination of Guaranty letter of April 8 or both the April 8 and April 14 letters,[5] leaving the guaranty in place and rescinding the assertion that her purported signature was a forgery. This is a material factual dispute that determines in large part the resolution of the case. The question of the viability of the guaranty agreement remains firmly in dispute in this case, and summary judgment is inappropriate.

¶ 22. ■ Plaintiffs also claim reasonable or justifiable reliance, which requires application of an objective standard. "Plaintiffs may justifiably rely upon a representation when the representation is not obviously false and the truth of the representation is not within the knowledge of, or known by the plaintiffs." *Silva v. Stevens*, 156 Vt. 94, 108, 589 A.2d 852, 860 (1991) (approving trial court's charge to jury on justifiable reliance). As to whether plaintiffs' reliance on the April 28 letter was justifiable, the trial court again reiterated that the letter failed to provide the assurances demanded, and ended by noting that the letter "expressly invited plaintiffs to contact him if they had any questions about the meaning of the April 28th Letter." However, the invitation from Marshall was not that specific. He ended the letter with a very common signoff — "if you have any questions, please do not hesitate to contact me." This is not a suggestion that there might be confusion in the letter. The question of whether reliance was justified remains in dispute.

¶ 23. Then, too, there is the issue of whether Marshall was actually authorized to send the April 28 letter. In Rowe-Button's deposition, which was incorporated into plaintiffs' statement of disputed facts, she testified that she never authorized Marshall to send the April 28 letter, that she repeatedly told Marshall that the guaranty was an "obvious forgery," and that she would strenu-

---

[5] The April 28 letter referred only to the April 8 letter, but the April 14 letter also labeled itself a termination notice, and there remained a question for the factfinder to determine if the April 28 letter purported to rescind the termination notices provided in both the April 8 and April 14 letters or only the April 8 letter.

ously resist making any payments on the guaranty. The court found the issue of no moment, stating that plaintiffs had not explained how a false statement from Marshall about his authorization was in any way material to the transaction or how the statement met any of the elements of intentional or negligent misrepresentation. Again, we disagree. Whether the secondary guarantor had revoked her guaranty agreement was plainly in dispute and material.

¶ 24. Finally, the court held that, as an independent basis for summary judgment on the claim for the noncalling of the $1 million note, Choiniere failed "to adduce more than speculative evidence of his damages deriving therefrom." In order to show that he was damaged as a result of the noncalling of the note, Choiniere would have to show that money could have been collected on the note and any guaranty at the time the April 28 letter was sent. *Larochelle v. Komery*, 128 Vt. 262, 268, 261 A.2d 29, 33 (1969) (explaining that plaintiff's measure of damages in fraud and deceit action is net amount of money actually lost as result of fraud). Choiniere attached a report to his opposition to summary judgment, in which his damages expert opined that "had Mr. Choiniere called the $1 million note on June 1, 2004, he would have collected all amounts due." While an assumption is not evidence, again there is a material factual issue in dispute: Was the termination letter designed to discourage Choiniere from calling in the $1 million note, and was there a possibility of redemption on the note?

¶ 25. Button did not file for bankruptcy until 2006. Choiniere offered as evidence the strong credit history he had with Button and reported on three payoffs made by Button with respect to other loans totaling $306,000. The trial court found that a jury would have had to speculate as to whether Button or his real estate holding company had sufficient funds in May 2004 to repay the entire September 2003 note. But that holding begs the question of the validity of the guaranty made by Rowe-Button. If Button or Button's company could not make good on the note, there remained the question of whether the secondary obligor was still obligated to honor the guaranty. While reasonable people may differ over whether and how much the plaintiffs would have been able to collect from the makers and guarantors of the two notes, this is far different from the court's conclusion on summary

judgment that defendants' actions had no adverse economic impact on plaintiffs.[6]

¶ 26. ■ One further note — the court's decision granting summary judgment to defendants also resolved the claim presented by P&D Consulting, Inc., as set forth in the fourth amended complaint. Because it will surely come up as an issue on remand, we note that the guaranty agreement executed was a continuing guaranty.

> A continuing guaranty is a contract pursuant to which a person agrees to be a secondary obligor for all future obligations of the principal obligor to the obligee. A continuing guaranty is terminable, and may be terminated by the continuing guarantor by notice to the obligee. . . . Upon termination of a continuing guaranty, the continuing guarantor remains a secondary obligor with respect to obligations of the principal obligor incurred prior to termination . . . .

Restatement (Third) Of Suretyship and Guaranty § 16. The court granted permission for the fourth amended complaint, but later clarified that, given Choiniere's concession that he was not seeking individual damages based on the P&D note, his complaint was dismissed to the extent he seeks damages in his individual capacity based on the P&D note. P&D's claim of reliance remains in the case on remand because, as noted, there remains a factual dispute as to whether the April 28 letter rescinded that April 14 letter in addition to the April 8 letter.

¶ 27. ■ Defendants also argue that P&D Consulting's claim is barred by the statute of limitations. In a December 13, 2011 ruling in response to defendants' motion to dismiss plaintiffs' fourth amended complaint, the trial court rejected this argument. In doing so, the court relied upon the relation-back doctrine originating in Rule 15(c)(2), which permits an amendment of a pleading to relate back to the original pleading when the new claim or defense "arose out of the conduct, transaction, or occurrence set forth . . . in the original pleading." That rule "is grounded on the notion that a party who has been notified of

---

[6] Choiniere suggests that it is reasonable to conclude he could have collected at least $250,000 from stepmother in 2004, since he recovered that amount from her in 2011 in settlement of the litigation against her.

litigation concerning a given transaction has been accorded all the notice that statutes of limitations are intended to afford." *Korda v. Chicago Ins. Co.*, 2006 VT 81, ¶ 15, 180 Vt. 173, 908 A.2d 1018 (quotation omitted).

¶ 28. ■ The trial court found that there was sufficient notice to allow the amended complaint because Choiniere had alleged since at least the summer of 2008 that he had relied upon the April 28 letter in making his business decisions, including his decision to provide the additional $1.3 million loan through his company, P&D Consulting, and that he had been harmed by his reliance on that letter. For the reasons stated in the trial court's December 2011 ruling, we agree that defendants, who were joined in the litigation within six years of April 28, 2004, had adequate notice of the P&D claim so as to support the court's decision to allow the amendment.

¶ 29. In sum, we hold that there are several material issues in dispute that preclude summary judgment, including the viability of the guaranty agreement after the April 28, 2004 letter, whether plaintiffs' reliance on the April 28 letter was justifiable, whether Marshall was authorized to send the letter, and whether there are any economic damages. Accordingly, we reverse and remand for a trial on the merits.

*Reversed and remanded for further proceedings consistent with this decision.*